JULIA NEWTON *v.* GEORGE A. YATES AND UNITED FARM BUREAU MUTUAL INSURANCE COMPANY.

[No. 1-975A160. Filed August 31, 1976.]

*Buena Chaney, Mann, Mann, Chaney, Johnson & Hicks,* of Terre Haute, for appellant.

*John C. Kite,* of Terre Haute, for appellee Yates; *Jerdie D. Lewis, Stephen L. Trueblood, Lewis, Lewis & Trueblood,* of Terre Haute, for appellee United Farm Bureau Mutual Insurance Co.

LYBROOK, J.—Plaintiff-appellant Julia Newton appeals from a negative judgment following trial by jury in her action to recover damages for personal injury.

The facts of the case indicate that plaintiff's alleged injuries were sustained as the result of a collision between an auto-

mobile operated by her sister, Helen Prall, and an automobile operated by defendant-appellee George Yates, an uninsured motorist. Plaintiff was a passenger in Prall's automobile at the time of the collision. Defendant-appellee, United Farm Bureau Mutual Insurance Company, (Farm Bureau) had issued a policy of insurance to Prall providing uninsured motorist coverage for Prall and passengers in her automobile. At trial, Farm Bureau admitted that by reason of its contract of insurance with Prall, it would be liable to the extent of its policy limits for any judgment rendered in plaintiff's favor against Yates.

Prior to trial, plaintiff served notice that she would assert a claim against Farm Bureau for punitive damages based upon its alleged misconduct in handling plaintiff's claim. Farm Bureau moved for and was granted a separate trial on the issue of punitive damages.

Trial upon the issue of Yates' liability resulted in a jury verdict in favor of Yates and Farm Bureau. Following entry of judgment against her, plaintiff filed her motion to correct errors which was overruled. For the reasons hereinafter stated, we conclude that plaintiff has demonstrated reversible error. Accordingly, we reverse the judgment and remand for a new trial.

As a result of our disposition of this appeal, we deem it necessary to address the following five of plaintiff's eleven alleged errors:

(1) Whether the court erred in granting Farm Bureau's motion for separate trial on plaintiff's asserted punitive damages issue.

(2) Whether the court erred in failing to order production by Farm Bureau of certain documents and evidence within Farm Bureau's control.

(3) Whether the trial court erred in granting Farm Bureau's motion to prevent plaintiff from taking depositions of Farm Bureau and two of its agents.

(4) Whether the court erred in granting Farm Bureau's motion to quash certain of plaintiff's witness subpoenas served upon Farm Bureau and two of its agents.

(5) Whether the court erred in granting Farm Bureau's motion to quash plaintiff's subpoena *duces tecum* served on defendant Farm Bureau.

## I.

Plaintiff's first alleged error is based on the trial court's granting of Farm Bureau's motion for a separate trial on the plaintiff's claim for punitive damages.

Less than two months prior to trial, plaintiff notified both defendants of her intention to assert a claim against Farm Bureau for punitive damages for its alleged malice, fraud, oppressive conduct and heedless disregard of the consequences in its handling of plaintiff's damage claim. Farm Bureau's motion for separate trial was granted following voir dire and swearing of the jury, but prior to opening statements and admission of any evidence.

The granting of a motion for separate trial is governed by Ind. Rules of Procedure, Trial Rule 42 (B) :

"(B) Separate trials. The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury."

We believe it imperative that the trial court be granted a wide degree of latitude in exercising its proper discretion in the granting of a motion made pursuant to TR. 42 (B), for separation of trials.

The primary issues to be tried dealt with the negligence of defendant Yates and any damages which that alleged negligence had caused the plaintiff. The somewhat belated assertion of a punitive damages claim changed the character of the issues, facts and evidence to be presented. For these reasons alone the trial court was clearly within its discretion to grant a separate trial, even at the rather unusual time when the mo-

tion was granted in the case at bar. *City of Indianapolis* v. *L & G Realty & Constr.* (1960), 132 Ind. App. 17, 170 N.E.2d 908; *Holt* v. *Granite City Steel Company* (E.D. Ill. 1957), 22 F.R.D. 65; *Locicero* v. *Humble Oil & Refining Company* (E.D. La. 1971), 52 F.R.D. 28, 319 F.Supp. 1133.

In light of the possible prejudice and confusion which could be created in the minds of the jurors by a punitive damages claim tried simultaneously with the liability issue, the trial court was well within its discretion to grant a separation of trials.

## II.

Newton's second issue for our review concerns the scope of discovery under the Indiana Trial Rules and the trial court's alleged error in excluding from discovery the vast majority of the documentary material requested. Newton requested the following items:

"(a) Investigation made and taken by employees, agents, and adjusters of, for, and on behalf of said insurance company of the automobile collision on January 8, 1972, between an automobile being driven by its insured Helen M. Prall (Policy No. 538959; membership No. 661091) and an automobile being driven by George A. Yates.

"(b) Contents of all statements taken and recorded by said insurance company (United Farm Bureau Mutual Insurance Company) from all witnesses and parties to said collision.

"(c) Estimates of damages done to the two automobiles involved in the collision, the repair orders, drafts issued by said company in payment for such repairs; and all photographs taken by said insurance company of said automobiles and the scene of the collision.

"(d) Subrogation agreements signed by Helen M. Prall in favor of said insurance company.

"(e) Correspondence from said insurance company to George A. Yates concerning said collision, and all correspondence received by said insurance company from George A. Yates concerning said collision.

"(f) All contracts, agreements, and statements in posses-

sion of said insurance company that were signed by George A. Yates concerning said collision.

"(g) Records of account kept by said insurance company showing monies paid to said insurance company by George A. Yates arising as a result of said collision.

"(h) All correspondence had between said insurance company and John C. Kite, Attorney for George A. Yates, concerning said collision.

"(i) All reports filed with said insurance company by its agent Dean Thomas concerning the investigation of said collision, including all correspondence to and from said agent sent and received by said insurance company.

"(j) All reports filed with said insurance company by its agent, Harry Jones, concerning the investigation of said collision and negotiations with Helen M. Prall, Julia Newton and attorney Buena Chaney, arising out of said collision, and all correspondence between said Harry Jones and said insurance company arising out of said collision.

"(k) All reports of liability evaluation made by agents of said insurance company concerning said collision.

"(l) All correspondence between said insurance company and Melvin M. Jennings, (the owner of the trailer parked near the scene of the collision) all investigation reports of interviews held by said insurance company with said Melvin M. Jennings, and all photographs of the trailer belonging to Jennings."

Any discussion of the correctness of the trial court's ruling on a scope of discovery question must use as its foundation the Indiana Rules of Procedure and more specifically TR. 26(B):

"(B) Scope of discovery. Unless otherwise ordered by the court in accordance with these rules, the scope of discovery is as follows:

"(1) In general. Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject-matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge for any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the infor-

mation sought appears reasonably calculated to lead to the discovery of admissible evidence.

"(2) Trial preparation: Materials. Subject to the provisions of subdivision (B) (1) and (3) of this rule, a party may obtain discovery of documents and tangible things prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing of good cause therefor, except that a statement concerning the action or its subject-matter previously given by the party seeking the statement may be obtained without such a showing. A statement of a party is

"(a) a written statement signed or otherwise adopted or approved by the party, or

"(b) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement which was made by the party and contemporaneously recorded."

Two key terms of TR. 26 (B) provide the guidelines by which a trial court must rule in requiring the production of documents. Initially, there must be a determination of relevancy to the issues being tried; and secondly, if that test is met, it must next be determined if the information is protected from discovery by a privilege or immunity.

The relevancy test must be applied to the issues to be tried. In the case at bar, since the punitive damages issue was properly separated, the desired information must be relevant to the issue of the negligence of Yates, as that issue is dispositive of any liability which Farm Bureau may have.

The record in the case at bar reveals that a hearing was held to contest the discoverability of the above listed items. As a result Farm Bureau was ordered to turn over its entire file for an *in camera* inspection of that file by the trial court. Following that inspection, the trial court ordered Farm Bureau to produce copies of photographs of the two automobiles involved in the collision, and a copy of the statement given by Helen Prall to an agent of Farm Bureau.

While an *in camera* inspection by a court on a discovery question is not unknown, it is at least rare. It is a discretionary act requiring the trial court to expend a great amount of time and energy. The record reviewed by this court contains none of the file which was inspected by the trial court, and this court must therefore face the problems of discoverability without the advantage of inspecting the above mentioned file.

Plaintiff's chief contentions are that the information was not privileged; and that even if privileged by the work product immunity, "good cause" had been shown to overcome that immunity.

The work product immunity, and the modern interpretation of that immunity, is a derivative of the classic case of *Hickman* v. *Taylor* (1947), 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451. From the holding of that case, the immunity was expanded to include agents of attorneys, *Alltmont* v. *United States* (3d Cir. 1949), 177 F.2d 971, and information gathered with an eye toward litigation by the client himself, *Guilford National Bank of Greensboro* v. *Southern Railway Company* (4th Cir. 1962), 297 F.2d 921.

An additional privilege rears its head regarding the discovery of insurance corporations' files, the privilege of an attorney and client. Corporations can, of course, avail themselves of the attorney-client privilege if the attorney was consulted in a legal capacity. *Radiant Burners, Inc.* v. *America Gas Association* (7th Cir. 1963), 320 F.2d 314, 98 A.L.R.2d 228. In addition, the attorney-client privilege is also extended to attorneys who are exclusive employees of a corporation (house counsel). *Malco Manufacturing Company* v. *Elco Corporation* (D. Minn. 1968), 45 F.R.D. 24.

One other consideration must be reviewed prior to our determination of the validity of the alleged error by the trial court in protecting Farm Bureau's file. The "principle of judicial parsimony" allows a court to delay or suspend discovery on one issue if the outcome of an-

other issue, to be tried first, will be dispositive of the entire case. *Joseph* v. *Donover Co.* (9th Cir. 1959), 261 F.2d 812; 8 Wright and Miller, *Federal Practice and Procedure,* page 286, § 2040. If the determination of Yates' negligence would dispose of the entire case, the trial court was well within its discretion to separate the trial and delay the punitive damages discovery.

Apparently Indiana has never affirmatively taken a position on the question of nominal damages being a prerequisite for allowing punitive damages. In a number of cases Indiana has held that punitive damages must be in some reasonable proportion to the compensatory damages awarded, *Murphy Auto Sales, Inc.* v. *Coomer* (1953), 123 Ind. App. 709, 112 N.E.2d 589. From that holding, it is but a short and logical step to follow the better reasoned decisions of foreign jurisdictions in requiring compensatory damages as a prerequisite for any award of punitive damages. *Ross* v. *Deposit Guaranty Nat. Bank of Jackson, Miss.* (S.D. Miss. 1974), 400 F.Supp. 45; *Hubbard* v. *Superior Court of Maricopa County* (1975), 111 Ariz. 585, 535 P.2d 1302; *Martin* v. *United Security Services, Inc.* (1975), Fla., 314 So.2d 765; *Stratton* v. *Jensen* (1975), 64 Mich. App. 602, 236 N.W.2d 527; *Montgomery Ward & Company, Inc.* v. *Keulemans* (1975), 275 Md. 441, 340 A.2d 705; *Madison* v. *Wigal* (1958), 18 Ill. App. 2d 564, 153 N.E.2d 90.

While it is possible that the protection of Farm Bureau's file may have been error had the trials not been separated, the doctrine of parsimony and the separation of trial have rendered any error harmless.

As a final determinate of which documents are to be clothed by the work product immunity, or the attorney-client privilege, this court acknowledges that a trial court, having seen the exact documents in question, will be capable of exercising its wise discretion on questions of discoverability. This is especially so in light of the fact that we have not reviewed the documents and the trial court has.

In light of the above discussion, it is clear that items (a), (b), (e), (f), (h), (i), (j), (k), (l), are clearly privileged as either work product of the attorney for Farm Bureau, or the product of its agents in anticipation of litigation. Absent a showing of "good cause" these items are not discoverable. Item (d), the subrogation agreement of Mrs. Prall, would appear to have no relevance to the issue of Yates' negligence and was therefore properly excluded from discovery by the trial court. Item (g) presents a perplexing question. It appears to request information which would be gathered in the ordinary course of business by Farm Bureau and would not appear to be privileged. However, due to the *in camera* inspection of the trial court, and the fact that we have not viewed the documents, we find that no reversible error has been demonstrated in withholding production of item (g).

The final discovery request for our consideration is for the estimates of damage to the automobiles and cost of repair thereto (item c). These items were not gathered in preparation of litigation, and clearly are not a part of the work-product immunity, and are relevant. The estimates of damage should have been produced, together with the repair orders and drafts paying for said repairs.

Many of the above mentioned items were excluded from production on a basis of their being the work product of the attorney or agent of the attorney. This must not be deemed to be an absolute bar to discovery. A showing of "good cause" by the moving party will necessitate an overriding of the qualified immunity and necessitate production of the documents.

Newton claims that she had met the requirements of showing good cause. We cannot agree. While an exact definition of good cause is somewhat elusive, it is clear that a mere allegation of need and a summary statement alleging that the information cannot be obtained from another source will not be sufficient to surmount the "good cause" hurdle. In interpreting a very similar federal

rule concerning the work product rule, 8 Wright and Miller, *supra,* § 2025 enumerates the following as *some* of the elements of good cause: (1) The information could not be obtained by deposing a witness; (2) The witness is no longer available; (3) The witness is hostile; (4) The witness no longer remembers the details of the occurrence and (5) The moving party must have substantial need of the material requested. This is by no means a complete list of the factors establishing "good cause" and each case will require an individual evaluation by the trial court and a prudent use of judicial discretion.

In light of our statement above, we reverse in part as to issue two with instructions that item (c) be produced.

### III.

The third issue presented for review deals with an order of the trial court excluding the taking of the discovery depositions of Farm Bureau and two of its agents. The basis for any determination of the deposing of individuals must be TR. 30. The key provision of that rule states:

"(A) When depositions may be taken. After commencement of the action, any party may take the testimony of any person, including a party, by deposition upon oral examination."

That rule must be linked with TR. 26 (B) (1) to resolve the problem of Newton's request to depose Harry Jones and Dean Thomas.

These two men were agents of Farm Bureau and had conducted the majority of the investigation into the liability aspects of the collision which resulted in this action. To say that these men are not subject to being deposed is clearly contrary to the spirit and meaning of the above cited trial rules.

It is realistically impractical to probe the scope of knowledge of these men without a discovery deposition. One could assume that they were allowed to inspect the automobiles following

the collision and quite possibly conducted an inspection of the accident site shortly after the collision occurred. Such first-hand knowledge is clearly discoverable and would ultimately be admissible into evidence at trial. The case of *Floe* v. *Plowden* (E.D. S.C. 1950), 10 F.R.D. 504, addressed itself to a nearly identical problem. In that case the plaintiff had subpoenaed an agent of defendant's insurer for the purpose of taking his discovery deposition. The plaintiff had also requested that the entire file, concerning the investigation by the insurer, be brought to the deposition for inspection. The court in that case quite aptly stated the correct rule in the matter:

> "I am of the opinion that this investigator may be called as a witness and may be interrogated as to just what he did, what he saw at the place of collision, the condition of the colliding vehicles, the condition of the roadway, character of pavement, location of ditches, sideroads, curves, elevations or any and all other physical facts that came to his attention. I think that he may be called upon to produce any photographs or delineations of any of the foregoing matters or other similar or pertinent things. He may be required to state whom he interviewed and give their names and addresses. And so there will be made available to the Plaintiff, the names and addresses of any and all witnesses discovered, seen or interviewed by that investigator. At this time, I see no reason why copies of statements obtained from witnesses should be furnished to Plaintiff. If these witnesses are known and available to him, he may take their depositions as readily as may the Defendant."

The case of *Jacobowitz et al.* v. *Kremer et al.*, (S.D. N.Y. 1946), 7 F.R.D. 110, supports the inferences to be drawn from *Floe, supra;* that discovery may not be thwarted totally because the party to be deposed is in possession of irrelevant information. The more correct procedure calls for the deposition to be taken and the irrelevant material to be objected to by the opponent. This procedure was anticipated in TR. 30 (C):

> "When there is an objection to a question, the objection and reason therefor shall be noted, and the question shall be answered unless the attorney instructs the deponent not to answer, in which case either party may certify the question and objection to the Court pursuant to Rule 37 (A)."

This procedure allows all relevant information to be available to both parties and for the trial court to make a definite ruling on all questions which have been certified and for which the deposing party made the appropriate motion to compel discovery under the trial rules.

Had Farm Bureau wished protection from possible harassment or other improper conduct directed toward either Jones or Thomas, the appropriate action would have been a motion to limit the scope of discovery. A partial protective order would have directed a narrow scope of discovery and forced the plaintiff to avoid irrelevant information. *Cannister Co.* v. *National Can Corporation* (D. Del. 1943), 3 F.R.D. 279, employed this narrowing of scope of discovery technique.

The quashing of the deposition subpoena for Thomas and Jones was error. Both men could logically have some relevant, non-privileged information subject to discovery. The quashing of the subpoenas necessitates a reversal as to that issue.

## IV.

Plaintiff's fourth allegation of error centers around the trial court's granting of Farm Bureau's motion to quash witness subpoenas for attendance at trial. The plaintiff had caused to be issued a subpoena for each of three parties, Harry Jones, Dean Thomas, and defendant Farm Bureau. As was stated above, both Jones and Thomas were agents of defendant Farm Bureau.

Having found no definitive authority for the quashing of a subpoena *ad testificandum* and being provided with none by counsel for any of the parties, this issue must be treated as one of first impression in this state.

Farm Bureau argues that TR. 45(B) provides authority for a trial court to quash a witness subpoena. That rule however, deals with subpoena *duces tecum* and has no applicability to subpoenas *ad testificandum*.

The reasons for the granting of a motion to quash the subpoenas appears to be immateriality, irrelevancy, and inadmissibility. These, in essence, were the only grounds placed before the trial court by Farm Bureau.

Here, much as was stated above, both men probably possess some relevant and admissible evidence to offer at trial. This, we think, would be the case even though the court had properly granted Farm Bureau's motion for separate trials on punitive damages issue.

The procedure for separating admissible from inadmissible testimony must not be the quashing of *all* testimony.

For the above reason, we find it necessary to reverse for the quashing of the subpoena *ad testificandum*. We are further reinforced in our decision by the fact that these same witnesses were protected from deposition by the trial court. In effect, any knowledge of the physical evidence which they may possess has been barred from Newton. For a combination of these reasons, we reverse as to Issue IV.

## V.

The plaintiff's final issue for review contests the granting of a motion to quash her subpoena *duces tecum* for the production of documents and other items at trial by defendant Farm Bureau. This motion is the proper subject of a ruling under TR. 45(B)(1) and TR. 26(C) dealing with protective orders.

Under normal circumstances, the burden is upon the moving party to show why the documents should not be produced. The usual grounds for quashing a subpoena *duces tecum* are unreasonableness or oppressiveness. However, in the case at bar, the *in camera* inspection by the trial court has altered that court's perception of the problem and placed the trial court in much the same position it occupied with regard to the motion to produce.

Here again, we must begin with the assumption that the

trial court was correct in his ruling on the motion and that he will only be reversed for a clear showing of arbitrariness. As the court in *In Re Manufacturers Trading Corp.* v. *Hadden* (6th Cir. 1952), 194 F.2d 948, stated in applying a nearly identical Federal Rule:

> "Whether a subpoena duces tecum should be enforced is, in the first instance, a question for the trial court, whose decision should not be disturbed unless it clearly appears arbitrary, which is not the case in the controversy before us. *Shotkin* v. *Nelson*, 10 Cir., 146 F.2d 402."

This position is even further reinforced by the *in camera* inspection conducted by the trial court in the case at bar.

This, coupled with the fact that Newton is merely attempting to circumvent the trial court's ruling in regard to production of documents as discussed above, by being more specific in the subpoena *duces tecum*, leads this court to sustain the trial court's granting of Farm Bureau's motion to quash the subpoena *duces tecum* (with the exception of the material ordered produced above).

For the reasons stated above, we reverse for the errors enumerated.

Affirmed in part, reversed in part and remanded for a new trial and further proceedings not inconsistent with this opinion.

Robertson, C.J., concurs; Hoffman, J., participating by designation, concurs.

NOTE.—Reported at 353 N.E.2d 485.