Deborah (Goins) BISHOP,
Appellant–Petitioner,

v.

Allan L. GOINS, Jr., Appellee–
Respondent.

No. 40A04–9009–CV–455.

Court of Appeals of Indiana,
Fourth District.

Feb. 19, 1992.

Dan A. Patterson, Jones Patterson Boll & Tucker, Columbus, for appellant-petitioner.

Corinne Finnerty, McConnell & Finnerty, North Vernon, for appellee-respondent.

CHEZEM, Judge.

## CASE SUMMARY

Appellant/petitioner, Deborah (Goins) Bishop, appeals from the denial of her petition to modify the custody order of her two children. We vacate and remand with instructions.

## ISSUES

Deborah presents two issues for review, however, because we vacate and remand on the first issue, we need not address the second issue. We restate the first issue as follows:

Are the records concerning the marital counseling of the custodial parent and his spouse subject to discovery?

## FACTS AND PROCEDURAL HISTORY

Deborah Bishop and Allan L. Goins, Jr., were divorced on October 26, 1983. At that time, custody of their two minor children, M.G. and A.G., was awarded to Deborah. On March 12, 1985, Deborah and Allan entered into an agreed modification granting custody of the children to Allan. On August 17, 1985, Allan married Diana Goins. On February 1, 1986, Deborah married Ed Bishop, which marriage was later dissolved on December 6, 1989.

On June 23, 1989, Deborah petitioned the trial court for a change of custody, alleging that there had been a change of circumstances so substantial and continuing as to make the existing custody order unreasonable. During pretrial discovery, Deborah deposed Sandy Zimmerman, who had been counseling M.G. and A.G. since 1987. During that deposition, it was discovered that Zimmerman had also conducted marital counseling between Allan and Diana. Thereafter, Deborah filed a motion for production of Zimmerman's records relating to the marital counseling. Diana refused disclosure, arguing that the records between her, a non-party, and Zimmerman were protected by the physician-patient privilege. The trial court conducted a hearing, and denied Deborah's motion to produce. Evidence was then heard on the merits of Deborah's custody claim. On June 15, 1990, the trial court concluded that Deborah had not shown a change in circumstances so substantial and continuing as to make the existing custody order unreasonable, and thus denied her petition.

## DISCUSSION AND DECISION

Deborah contends that the marital counseling records of Allan and Diana were subject to discovery.[1] A trial court exercises judicial discretion in ruling on discovery issues, and we will reverse on appeal only for an abuse of that discretion. *THQ Venture v. SW, Inc.* (1983), Ind.App., 444 N.E.2d 335. To determine whether the trial court abused its discretion, we look to the provisions of Ind. Trial Rule 26(B):

Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows: (1) *In general.* Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject-matter involved in the pending action, ...

---

1. Allan contends that the marital counseling records were not subject to discovery under IC 16–14–1.6–8(f) without the consent of the patient. However, because Zimmerman does not come within the definition of IC 16–14–1.6–1, that chapter is not applicable to anyone receiving her services. We note that IC 16–4–8–3.1, effective July 1, 1990, would prevent the discovery of the records in this case absent the consent of the patient or a court order, received after a hearing, showing good cause.

To obtain discovery here, the trial court must first determine whether the information sought is relevant[2] to the issue being tried. *Newton v. Yates* (1976), 170 Ind.App. 486, 353 N.E.2d 485, *trans. denied.* If the information is not relevant, no further inquiry is necessary and the discovery is prohibited. However, if the information is relevant, the trial court must then determine whether the information is exempted from discovery by privilege or immunity. *Id.*

Deborah contends that the marital counseling records of Allan and Diana are relevant to the custody dispute. The record shows that Allan was unmarried when he received custody of M.G. and A.G.; his marriage to Diana occurred five months later. Since that time, Diana has been primarily responsible for the care of M.G. and A.G. in the Goins' home. As such, Diana's mental health was relevant to determine the best interests of the children.[3]

Deborah also contends that the information sought was not the subject of privilege or immunity. The Supreme Court recently addressed the applicability of the physician-patient privilege to non-physician counselors. *Matter of C.P.* (1990), Ind., 563 N.E.2d 1275. Because the privilege is intended to inspire full and complete disclosure to further successful treatment by the physician, the Court found that a counselor who aids a physician is covered by the privilege. Conversely, a counselor who acts independent of a physician is not covered by the privilege. *Id.*

Thus, the question is whether Zimmerman was acting independent of a physician when providing the marital counseling to Allan and Diana. The record shows that Zimmerman has a Master's degree in Counseling and is a certified mental health counselor. While her office is located in and affiliated with the practice of five pediatricians, there is no evidence that these physicians participated with the marital counseling of Allan and Diana. Thus, the evidence indicates that Zimmerman acted alone and independent of any physicians. Accordingly, the trial court erred in determining that the marital counseling records were protected by the physician-patient privilege. The records are discoverable.

We vacate the order of the trial court and remand with instructions to: 1) enter an order allowing discovery of the marital counseling records; and 2) conduct a new hearing to determine whether there has been a change of circumstances so substantial and continuing as to make the existing custody order unreasonable.

STATON, J., concurring.

MILLER, J., dissenting with opinion.

MILLER, Judge, dissenting.

I dissent. Although I agree that Diana's mental health, if suspect, is a relevant consideration for the trial court as Diana is the children's primary care-giver, the information Deborah seeks is not relevant to the issue of Diana's mental health or to the issue of the best interest of the children.

The majority decision is based on Ind. Code 31–1–11.5–21(a)(6) which makes the "mental and physical health of all individuals involved" a relevant consideration. There is no question here about the mental or physical health of either party. The question is whether Allan and Diana remain fit parents for the ten and eight year-old girls. In this regard, the court was well informed. Elizabeth Siegmann—who testified at trial—conducted a custody evaluation for the court. In addition to interviewing the children, Allan and Diana, she evaluated both Allan's and Deborah's home

---

**2.** Relevancy for purposes of discovery is not the same as relevancy at trial; a document is relevant to discovery if there is the possibility that the information sought may be relevant to the subject matter of the action. *CIGNA–INA/Aetna v. Hagerman–Shambaugh* (1985), Ind.App., 473 N.E.2d 1033.

**3.** IC 31–1–11.5–21(a)(6) provides that "the mental health and physical health of all individuals involved" is a relevant factor for the trial court to consider in making a custody determination. While we do not attempt to delineate the scope of the phrase "all individuals involved," this clearly includes a step-parent who is primarily responsible for the custodial household.

and observed the children with each parent. Her detailed report was in evidence as well as her testimony. She was not able to make a custody choice.

In addition, both children were in counselling. Counselor Sandra Zimmerman testified about the problems the children were having. She testified that Diana had disciplined the children improperly, but stopped when Sandra told her it was improper. The substance of Zimmerman's testimony was that the girls were having problems from time to time, some of which may have been related to Allan's and Diana's marital problems, but the family was working through them. Also not mentioned by the majority is the fact that Allan and Diana have two children, ages two and four.

The evidence also shows that Deborah has been married and divorced five times. She is living with a man in Texas in a home that was described by a Texas social worker as "more than adequate for herself and her two daughters". R. 470. Siegmann's report contained a letter from a prospective employer who hoped to hire Deborah (then unemployed) for part-time work in June, 1990. The letter also stated that Deborah would hopefully become a full-time employee upon completion of computer training. Finally, the trial court interviewed both girls. Based on all this information, the trial court determined Allan and Diana were fit parents.

Back to the issue before us. The majority holds that Deborah should be allowed to conduct a fishing expedition into the intimate details of Diana's and Allan's marriage counselling. I cannot agree. In my opinion, Diana and Allan show good judgment and should be commended for seeking help—possibly to prevent another divorce and another disruption to the children's lives. Instead of encouraging this behavior, the majority opinion puts the single or remarried parent, who is wise enough to seek counselling, in a position of losing custody based on potentially damaging information revealed to a marriage counselor. Custodial parents will now be justifiably reluctant to seek such counselling for fear their ex-spouse will have access to the records and intimate details of their lives which are not material or relevant to custody.

It is unquestionable that children are affected by their parents' divorce and their subsequent remarriages. They could also be adversely affected when problems arise between their custodial parent and second spouse, which may or may not justify a change in custody. However, an ex-spouse who just wants to see "what's going on" between the custodial parent and his spouse should not be permitted to invade the sanctity of the custodial parent's subsequent marriage. It is unfortunate that the majority opinion would permit such an invasion when it would be unthinkable to require couples who have never been divorced to divulge records of their counselling to a third person who wants to see what's going on between the couple.

Indiana Code 31–1–11.5–21(a)(6) states that "the mental and physical health of all individuals involved" is a relevant consideration for the court in making a custody determination. Thus, under the majority's view, a parent seeking custody should have access to the records of the custodial parent's and his spouse's marriage counselling upon request. A logical extension of this holding is that the non-custodial parent should be permitted to see the custodial parent's and his spouse's medical records upon request. However, one who goes to a doctor is not necessarily physically ill. A visit to the doctor could be for a routine checkup, a flu shot, or for other "preventive health" reasons. Similarly, going to a marriage counselor does not show signs of mental illness; rather, it shows good judgment. Marriage counselors treat healthy, intelligent people who have difficulty dealing with marital problems and need advice. Just as custodial parents might be reluctant to disclose potentially relevant, but embarrassing, information to a physician if an ex-spouse would soon learn those details, custodial parents would likewise be reluctant to share information with a marriage counselor. I agree with the trial judge that the counselling information was irrelevant here and should not have been discoverable.

The question of relevance in any particular case is, of course, a question for the trial court. Here, the only reason given by Deborah is that she knew Allan and Diana were having problems and she wanted to see what was going on between them. This is not sufficient to raise a serious question as to Diana's mental health. I am not willing to concede that records of private marital counselling of a custodial parent or of a non-custodial parent with visitation rights is subject to discovery as being relevant in a custody proceeding. The object of custody proceedings is to determine the best interest of the children and not to disrupt or even destroy later marriages. The trial court has ample investigative tools (including a home study and interviews which were done here) to determine the best interest of the children.

The second issue raised by Deborah—whether the trial court erred in refusing to modify custody—is an invitation to this court to reweigh the evidence, which we may not do. I would therefore affirm the decision of the trial court.