## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Jun 09 2015, 9:18 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Andrea L. Ciobanu
Alex Beeman
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Brian K. Zoeller
Julie Andrews
Maggie L. Sadler
Cohen & Malad, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Sheila R. (Naum) Porter,

*Appellant-Petitioner,*

v.

Brett T. Naum,

*Appellee-Respondent.*

June 9, 2015

Court of Appeals Case No.
49A02-1409-DR-623

Appeal from the Marion Superior Court.

The Honorable John F. Hanley, Judge.

The Honorable Christopher B. Haile, Magistrate.

Cause No. 49D11-0401-DR-43

**Riley, Judge**

## STATEMENT OF THE CASE

Appellant-Petitioner, Sheila R. (Naum) Porter (Mother), appeals the trial court's findings of fact and conclusions of law, and order on custody, emancipation and attorney's fees, denying her motion for modification of custody of the minor child, L.N., and granting her motion for emancipation of the two older children.[1]

We affirm.

## ISSUES

Mother raises three issues on appeal, which we restate as:

(1) Whether the trial court abused its discretion by quashing the subpoena *ad testificandum* to elicit testimony from the minor child;

(2) Whether the trial court violated Mother's due process rights by granting Father's request for reimbursement of medical expenses; and

(3) Whether the trial court abused its discretion when it ordered Mother to pay Father's attorney's fees in the amount of $15,000.

## FACTS AND PROCEDURAL HISTORY[2]

---

[1] The parties do not appeal the emancipation of Damon Naum, born in August 1993, and Sarah Naum, born in May 1995. Facts with respect to these young adults will only be included if relevant to the appealed issues.

[2] Even though the notice of appeal and completion of transcript were filed prior to the new Administrative Rule 9(G) becoming effective, we applaud parties for attempting to comply with the provisions of the Rule to retain confidentiality of certain facts in this cause. As such, we have equally endeavored to maintain confidentiality on appeal and, thus, approach the inclusion of certain facts with the necessary caution. But

[4] On August 18, 2000, after approximately nine years of marriage, a decree of dissolution of marriage was entered between Mother and Appellee-Respondent, Brett T. Naum (Father). During their marriage, three children were born: Damon Naum (Damon), born on August 11, 1993, Sarah Naum (Sarah), born on May 24, 1995, and L.N., born on April 10, 1997. Pursuant to the divorce decree, Father was awarded sole legal and physical custody of the parties' three minor children, with Mother receiving supervised parenting time. Mother was ordered to pay weekly child support in the amount of $55. On November 19, 2004, the trial court documented Mother's child support arrearage to be $5,011.97 and entered a judgment of $1,800 in Father's attorney's fees against Mother. On April 7, 2005, Mother obtained unsupervised parenting time, with restrictions as to specific people who were not to be around the children. In the three years preceding the trial court's final order in this cause, Mother had never exercised more than fifty overnights per year with the children.

[5] On January 4, 2008, Mother filed a petition for contempt citation and petition for emergency hearing on modification of custody, parenting time, and child support. Three days later, Father filed his notice of respondent's active duty

---

an appellate opinion that both decides the case and articulates the law requires consideration of the underlying facts. Accordingly, we have included a number of facts derived from the confidential records in this cause because "we deem such information to be public as essential to the resolution of the litigation and appropriate to further the establishment of precedent and the development of the law." *Drake v. Dickey*, 2 N.E.3d 30, 32 n.1 (Ind. Ct. App. 2013), *aff'd* 12 N.E.3d 875 (Ind. 2014).

military service and request for stay of proceedings pursuant to the service members' civil relief act. On February 7, 2008, Mother withdrew her petitions.

[6] On November 4, 2013, Mother filed a verified emergency motion for modification of custody and request for expedited hearing, as well as a verified petition for modification of custody, a verified motion to appoint a guardian ad litem, and a verified petition to terminate child support for Damon and Sarah due to their emancipation. In her emergency motion, Mother alleged that Father had become physical with L.N., slapping her across the face. Mother elaborated that on October 27, 2013, Father and Damon had entered L.N.'s bedroom. During the argument that ensued, Father instructed Damon to silence L.N. upon which Damon slapped his sister in the face. On November 18, 2013, Mother filed her petition for order of protection and request for hearing, filed on behalf of L.N., asserting that Father had hit L.N. with his fist. L.N. was knocked to the floor, and "decided to lay there to avoid further abuse from" Father. (Appellant's Conf. App. p. 39). 911 was called and L.N. was transported to the hospital.

[7] On November 20, 2013, Father filed his verified response to Mother's verified motion to appoint a guardian ad litem and her emergency motion for modification of custody, and request for expedited hearing. In his response, Father noted, in pertinent part, that

> 5. [L.N.] is sixteen (16) years of age and is now, and has been, a troubled child. From a very early age, [L.N.] began exhibiting behavioral issues which continue to date. [L.N.] has a history of lying

about her whereabouts, her activities, and her companions and wishes to move from Father's home where there is structure and discipline.

6. Because Father would not agree to allow [L.N.] to move from his home, in an attempt to force the issue, [L.N.] invented a story of neglect and abuse which was reported to the department of Child Services (DCS) by an anonymous caller.

7. DCS investigated and found the allegations to be unsubstantiated.

8. Father believes that Mother, who has not had custody of [L.N.] for thirteen (13) years, and whose own history of poor decisions in this matter resulted in her having supervised parenting time for several years, allows [L.N.] to have more freedom than is wise for a 16-year old child, especially one who is as confused as [L.N.] is at this time.

9. Father believes it is in [L.N.'s] best interest for her to remain with him where he will continue to provide love, structure, discipline and counseling for [L.N.'s] behavioral issues. . . .

(Appellant's App. p. 46).

[8]     On December 2, 2013, Mother filed a motion to quash subpoena *duces tecum*, seeking to quash the notice of deposition served on her by Father. On December 4, 2013, the trial court issued its order on the motion to quash, advising the parties to agree on a date before December 20, 2013. On December 5, 2013, Mother filed a motion for appointment of a domestic relations counseling bureau (DRCB) investigation. On December 18, 2013, Mother filed a belated verified notice of relocation and a verified motion to offset child support overpayments against attorney's fees, requesting that the child support she paid for Damon and Sarah during the time they should have been emancipated be credited against the amount she owed Father in previously awarded attorney's fees. At the same time, she also filed an

amended witness and exhibit list, naming, among others, L.N. as a potential witness.

[9] On December 20, 2013, after a hearing, the trial court denied Mother's emergency motion for modification of custody and appointment of a guardian ad litem, but granted her request for appointment of a DRCB investigation. On January 10, 2014, Mother filed an amended motion to credit her overpayment in child support towards the arrearage in Father's attorney's fees, which was subsequently denied by the trial court on February 12, 2014. Two days later, Mother filed a motion to correct error and/or to reconsider or, in the alternative, to rule on Mother's emancipation petition.

[10] On March 14, 2014, Mother filed a notice of appeal to the trial court's denial of her amended motion to offset her child support overpayments, as well as a motion to remand pending the trial court's ruling on her motion to correct error. The trial court denied Mother's motion to correct error that same day. On March 28, 2014, this court declared Mother's motion to remand to be moot. On April 1, 2014, Mother filed an amended notice of appeal to reinstate the appellate process. Two weeks later, Father filed a motion to dismiss the appeal as the appealed order was not a final order. We granted Father's motion on May 16, 2014, and dismissed Mother's appeal with prejudice.

[11] On May 2, 2014, Father filed his praecipe for final hearing with the trial court, which the trial court set for July 8, 2014. On May 28, 2014, Mother filed a motion for an in camera hearing with counsel present so L.N. "can comfortably

express her desires and concerns as they relate to her current living arrangement with Father." (Appellant's App. p. 159). The trial court denied Mother's request on May 30, 2014. On June 6, 2014, Mother filed her motion to reconsider the in camera hearing and to vacate the trial court's May 30 order on the basis that "Father fears what [L.N.] may express to the [c]ourt and, as such, first attempted to discredit her as a child with 'behavioral issues.' However, now Father indicates that [L.N.] is a child suffering from 'serious mental health issues.'" (Appellant's App. p. 166) (internal references omitted). On June 10, 2014, Mother's motion to reconsider was denied by the trial court. On the same day, Father moved for attorney's fees incurred in the dismissal of Mother's appeal.

[12] On July 7, 2014, the day before the final hearing, Mother filed a notice of intent to call L.N. as a witness at the final hearing and served Father with a copy of a subpoena *ad testificandum* issued to L.N. The following morning, Father filed his motion to quash subpoena *ad testificandum*, which was granted by the trial court. The trial court conducted its final hearing that same day.

[13] On August 18, 2014, the trial court issued its findings of fact, conclusions of law, and order on custody, emancipation, and attorney's fees, concluding, in pertinent part, that

> 36. Mother failed to meet her burden of proof on all of the factors required for modification of custody. Beyond her own wishes, Mother was unable to prove that a substantial change in circumstances has occurred to support that a modification of custody is in the best interests of the child.

37. Mother's on-going denial of [L.N.'s] mental health issues places the child's welfare at risk.

38. [L.N.] has been displaying serious behavioral problems in school and at home. Father has addressed these problems in a timely and appropriate manner which has been in the child's best interest.

39. Father has concerns that Mother would fail to ensure that [L.N.'s] educational, social, and behavioral needs are not being met.

40. Stability is in the child's best interest and any transfer of custody to Mother could possibly disrupt the child's treatment which would be detrimental to her recovery.

41. Mother has failed to present evidence proving that there has been a substantial change in circumstances in one or more of the factors.

42. It is in the best interest of the children that primary physical custody remains with Father. Mother shall be entitled to parenting time pursuant to the [Indiana Parenting Time Guidelines].

43. Mother is ordered to fully cooperate in [L.N.'s] mental health treatment and counseling.

* * *

45. The older children are emancipated by law. However, the emancipation does not date back to the date of emancipation due to the existence of an in gross order. The overpayment of child support only dates back to the date of filing for modification of child support.

* * *

47. Father established that Mother had a past due uninsured medical expense arrearage for the children in the amount of $577.00. Mother is entitled to a credit of support overpayment as a result of the emancipation in the amount of $490.00 as established in Father's Exhibit B. Offsetting Mother's overpayment against her medical arrearage results in her owing Father $87.00 in past due medical bills.

* * *

54. Between November of 2013 and the final hearing, Mother filed approximately eleven motions with the court, two notices of appeal and multiple motions with the Indiana Court of Appeals, served Father with two sets of interrogatories, three sets of requests for production, two sets of requests for admissions, and deposed Father.

55.  Father was forced to respond to these motions.  When Father attempted to refrain from responding to Mother's motion for child support overpayments to offset attorney's fees, Mother's attorney went so far as to file a notice with the court that Father was non-responsive, forcing Father to incur further attorney fees.

56.  Furthermore, Mother's notice of appeal was dismissed because this [c]ourt had simply not yet issued a final order.  When it became apparent that Father needed to file a motion to dismiss and that the [c]ourt of [a]ppeals would not dismiss *sua sponte*, Father was again forced to incur unwarranted attorney fees.

57.  Furthermore, Mother has shown a complete disregard for the well-being of the mentally ill child in this case by exposing her to the proceedings by seating her at the counsel's table and more egregiously by attempting to force her on the eve of trial to be transported from an inpatient mental health treatment facility in Columbus Indiana to testify at the hearing.

58.  Furthermore, Mother continued to pursue a modification of custody despite being told by the Department of Child Services caseworker who investigated this matter that the child's allegations were unsubstantiated and indeed fabricated by the child.

59.  Mother's flat fee representation has had the effect of allowing Mother to run up Father's attorney fees.

60.  Many of Mother's actions in this proceeding were without merit and not in the best interest of the child and she should contribute toward Father's fees.

61.  That the [c]ourt finds Father's fees of $20,000.00 are reasonable given the extensive filings and responses required by Father's attorney, the complexity of the matter and the issues involved.

62.  [Mother] shall contribute $15,000.00 towards [Father's] attorney fees incurred in this action.  . . .

(Appellant's App. pp. 248-53).

[14]  Mother now appeals.  Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

## I. *Subpoena Ad Testificandum*

[15] During these custody proceedings, Mother repeatedly attempted to elicit the testimony of the minor child in an effort to rebut Father's allegations that L.N. is suffering from certain mental health issues. Ranging from an order of protection to listing L.N. as a potential witness and requesting an in camera interview, Mother's filings culminated in a subpoena *ad testificandum*, served on the eve of the final hearing. On the morning of trial, Father filed a motion to quash the subpoena on the ground that L.N. was receiving inpatient mental health services and disrupting her treatment would not be beneficial for her care. The trial court quashed the subpoena *ad testificandum*. Mother now contends that the trial court abused its discretion when it quashed the subpoena as it deprived her of the opportunity to refute the allegations made by Father about L.N.'s behavior and to which Mother could not testify as she lacked personal knowledge.

[16] As a general matter, the decision to admit or exclude evidence is within the trial court's sound discretion and is afforded great deference on appeal. *Southtown Props., Inc. v. City of Fort Wayne ex rel. Dep't of Redev.*, 840 N.E.2d 393, 399 (Ind. Ct. App. 2006), *trans. denied*. A trial court's decision to exclude evidence constitutes an abuse of discretion if it is clearly against the logic and effect of the facts and circumstances before the court or if it misinterprets the law. *Id*. Additionally, erroneously excluded evidence requires reversal only if it relates to a material matter or substantially affects the rights of the parties. *Turner v.*

*Bd. of Aviation Comm'rs*, 743 N.E.2d 1153, 1165 (Ind. Ct. App. 2001), *trans. denied*.

[17] In *Newton v. Yates*, 353 N.E.2d 485 (Ind. Ct. App. 1976), *reh'g denied*, this court dealt with the question of the court's authority to quash a subpoena *ad testificandum* for the first time. The *Newton* court noted that Indiana Trial Rule 45(B), which provides a trial court with authority to quash a witness subpoena, only refers to "subpoena *duces tecum* and has no applicability to subpoenas *ad testificandum*." *Id*. at 499. Applying the general rule of evidence that a witness must present relevant and admissible testimony, the court held that the quashing of a subpoena *ad testificandum* is improper where a witness potentially has some relevant and admissible evidence to offer at trial. *Id*. at 494; *see also In re Adoption of L.C.*, 650 N.E.2d 726, 732 (Ind. Ct. App. 1995), *reh'g denied, trans. denied*. Accordingly, a trial court may properly quash a subpoena on immateriality, irrelevancy, or inadmissibility grounds. *In re Adoption of L.C.*, 650 N.E.2d at 732. However, our court has previously warned that the "procedure for separating admissible from inadmissible testimony must not be the quashing of all testimony." *Newton*, 353 N.E.2d 485, 494 (Ind. 1976).

[18] Claiming that the minor child was competent to testify, Mother asserts that L.N. "had some pretty significant and important testimony for which [sic] the trial court should have heard which goes directly towards what is in her best interests and even to the protective order requested by Mother on behalf of [L.N.]." (Appellant's Br. p. 23). As pointed out by Father, L.N. had been interviewed by the DRCB and had the opportunity to disclose her claimed

allegations of abuse, but did not do so. As such, Father maintains that L.N.'s testimony would have been irrelevant and cumulative. We agree.

[19] During the DRCB investigation, the parents and the three children were interviewed separately and confidentiality. Mother and Father both presented their concerns and wishes to the investigator, including accounts on how the other parent treated the children. While talking with L.N., the investigator noted that she was guarded and reluctant to speak. Even though she was given the opportunity to divulge the details—or even the existence—of her allegations, she did not do so. The investigator also located collateral information from IMPD and DCS reports. The DRCB report concluded L.N. to be in need of additional support, extending beyond the basic, family intervention. The report also recognized that Father presented as an advocate for L.N. and showed willingness to give her the care she needed, while Mother was reluctant to accept that her daughter required mental health assistance or extra parenting supervision. Accordingly, as the trial court had ordered the DRCB investigation as part of the proceedings and L.N. had been interviewed and allowed to present her wishes and concerns, the trial court did not abuse its discretion by quashing the subpoena as L.N.'s testimony would have been cumulative to the DRCB's proceedings.

[20] After the trial court properly quashed the subpoena *ad testificandum* and during the hearing—at which L.N. was not present—Mother attempted to make an offer of proof by presenting the trial court with a proffer of L.N.'s testimony, filed with the court on the morning of the hearing and signed by Mother's

counsel. The trial court vociferously refused to let Mother make an offer of proof and ordered Mother's filing of the proffered testimony stricken from the record.

[21] Older case law suggests that when the objection "is to the right of the witness to testify at all, the party introducing that witness need not state what he expects to prove by him, as the question for the court to pass upon in such a case is not as to the competency of the [witness'] testimony, but as to the competency of the witness himself." *Sullivan v. Sullivan*, 32 N.E. 1132, 1133 (Ind. 1893). However, more recent case law has held that an offer of proof is required even when the trial court has found a witness incompetent or when it has otherwise prevented a witness from giving any testimony. *Bedree v. Bedree*, 747 N.E.2d 1192, 1196 (Ind. Ct. App. 2001), *trans. denied*. In *Donaldson v. Indianapolis Pub. Transp. Corp.*, 632 N.E.2d 1167, 1170 (Ind. Ct. App. 1994) (internal reference omitted), we noted:

> During direct examination, when the trial court rules that a witness may not testify, the proponent of the excluded testimony must make an offer of proof to preserve the ruling for appellate review. An offer of proof provides the appellate court with the scope and effect of the area of inquiry and the proposed answers, in order that it may consider whether the trial court's ruling excluding the evidence was proper.

Thus, failure to make an offer of proof results in waiver of the evidentiary issue. *Bedree*, 747 N.E.2d at 1196.

[22] Because an appellant may be subject to waiver if he or she fails to make an offer of proof, we believe that generally, the better course of action is for the trial court to allow an offer of proof so that a record can be made for this court on

appeal. *See id*. However, we do not believe that the trial court committed reversible error in this particular instance by disallowing Mother's offer of proof of L.N.'s purported testimony. Indiana Evidence Rule 103(a)(2) states that error may not be predicated upon a ruling excluding evidence unless a substantial right of the party is affected and an offer of proof was made *or* "the substance of the evidence . . . was apparent from the context[.]" The substance of L.N's proffered testimony was apparent from the context as both Father and Mother testified as to L.N.'s wish to live with Mother and to L.N.'s dysfunctional relationship with Father, which was well documented in the various reports properly before the trial court. Therefore, we conclude that the trial court properly quashed Mother's subpoena *ad testificandum* and although the trial court abused its discretion when it rejected Mother's offer of proof of L.N.'s anticipated testimony, this error was harmless and would not have affected the outcome of the modification proceeding.

## II. *Reimbursement of Medical Expenses*

[23] Next, Mother contends that she was denied due process because Father had not provided her with notice that he intended to request the reimbursement of medical expenses during the final hearing. Relying on Trial Rule 15(B), Father replies that because Mother was ordered in the dissolution decree to pay a certain amount of the uninsured medical expenses, Mother was on notice that this issue could be brought before the trial court during the hearing.

[24] Due process requires notice, an opportunity to be heard, and an opportunity to confront witnesses. *In re M.L.K.*, 751 N.E.2d 293, 295-96 (Ind. Ct. App. 2001). Before an action affecting a party's interest in life, liberty, or property protected by the Due Process Clause of the Fourteenth Amendment proceeds, the State at a minimum, must provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (citing *Yoder v. Elkhart Co. Auditor,* 632 N.E.2d 369, 372 (Ind. Ct. App. 1994). Such notice must reasonably convey the required information to the affected party, must afford a reasonable time for that party to respond, and is constitutionally adequate when the practicalities and peculiarities of the case are reasonably met. *In re M.L.K.*, 751 N.E.2d at 296.

[25] While Indiana is a notice pleading state, issues may be tried without an overt pleading pursuant to Ind. Trial Rule 15(B). *Baker v. Midland-Ross Corp*. 508 N.E.2d 32, 35 (Ind. Ct. App. 1987), *trans. denied*. Trial Rule 15(B) provides as follows:

> When issues not raised by the pleadings are tried by the express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendments of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment, but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the preservation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that

> the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

The purpose behind T.R. 15(B) is to provide the parties with some flexibility in litigating a case, and to promote justice by permitting evidence brought in at trial to determine the liability of the parties. *Baker*, 508 N.E.2d at 37. The function of the issues, whether formed by the pleadings, pre-trial orders, or contentions of the parties, is to provide a guide for the parties and the court as they proceed through trial. *In re V.C.*, 867 N.E.2d 167, 178 (Ind. Ct. App. 2007). Either party may demand strict adherence to the issues raised before the trial. *Id.* If the trial court allows introduction of an issue not raised before trial, an objecting party may seek a reasonable continuance in order to prepare to litigate the new issue. *Id.* However, where the trial ends without objecting to the new issue, the evidence actually presented at trial controls. *Baker*, 508 N.E.2d at 35. Consequently, neither pleadings, pre-trial orders, nor theories proposed by the parties should frustrate the trier of fact from finding the facts that a preponderance of the evidence permits. *Id.*

[26] Because fairness compels certain restraints, however, there are limits upon the principle of amending pleadings through implied consent. *In re V.C.*, 867 N.E.2d at 178. For example, a party is entitled to some form of notice that an issue that was not pleaded is before the court. *Id.* Notice can be overt, as where the unpleaded issue is expressly raised prior to or sometime during the trial but before the close of the evidence, or implied, as where the evidence presented at

trial is such that a reasonably competent attorney would have recognized that the unpleaded issue was being litigated. *Baker*, 508 N.E.2d at 35.

[27] The record reveals that Father had sent Mother a request for reimbursement of medical expenses on January 1, 2008, without receiving any financial satisfaction from her. During the hearing, Father introduced the issue of these unreimbursed medical expenses in the framework of Mother's motion to offset her child support overpayments due to the emancipation of the older children. Our review of proceedings reveals a plethora of evidence elicited without objection at trial that Mother had not received notice of Father's intent to seek this reimbursement. Specifically, Father was allowed to testify—without objection—on his request for reimbursement, the amount of the medical expenses and Mother's share thereof, and introduce his written request of 2008 into evidence. Although in her appellate brief Mother claims to have objected to the admission of the itemized exhibit, no such objection appears on the record. Rather, the closest Mother came to raising an objection was during cross-examination, when she confirmed with Father that he had "nothing pending before [t]his [c]ourt to actually ask for these reimbursements from 2008, do you?" (Tr. p. 145). However, no formal objection was ever lodged.

[28] Accordingly, as Mother received overt notice by Father's express request to reimburse Mother's share of medical expenses during the hearing and prior to the close of the evidence, and she failed to insist on a strict adherence to the issues raised or ask for a reasonable continuance, the unreimbursed medical expenses were properly before the trial court. Mother's due process rights were

not violated. Therefore, we affirm the trial court's grant of Father's request for reimbursement of medical expenses.

### III. *Father's Attorney's Fees*

After receiving evidence on Father's attorney's fees incurred during these child custody modification proceedings, the trial court concluded that Father's fees of $20,000 were reasonable and ordered Mother to contribute $15,000 towards these fees. Mother now disputes Father's award of attorney's fees.

Pursuant to Ind. Code § 31-17-7-1, the trial court may order a party to pay a reasonable amount for the cost of the other party maintaining an action for custody modification and for attorney's fees and mediation services. The trial court had broad discretion in awarding attorney's fees. *Haley v. Haley*, 771 N.E.2d 743, 753 (Ind. Ct. App. 2002). We will reverse the trial court's decision to award attorney's fees only if the decision is clearly against the logic and effect of the facts and circumstances. *Id.* What constitutes a reasonable attorney's fee "is not limited to an hourly rate, but includes such matters as the result achieved . . . and the difficulty of the issues." *Finley v. Finley*, 422 N.E.2d 289, 293 (Ind. Ct. App. 1981). When determining whether an award of attorney's fees is appropriate, the court may also consider such factors as the resources of the parties, their relative earning abilities, and other factors which bear on the reasonableness of the award. *Id.* Any misconduct on the part of one party which causes the other party to directly incur additional fees may be taken into consideration. *Id.*

[31] The complexity of the case is evidenced by Mother's filings of 26 motions, Father's filing of 12 motions, numerous objections and responses, extensive discovery by Mother, as well as subsequent notices of appeal. The short time span in which all motions were made and the appeal was taken is indicative of the contentious nature of this modification. Mother pursued the modification, requesting the same result—a court-conducted interview of the minor child— several times and by varied legal avenues, regardless of the well-being of a mentally ill minor child and in spite of the unsubstantiated reports of child abuse. Even though Mother was successful in having the minor child interviewed by the DRCB, Mother persisted in filing repeated motions to have L.N. brought into court, even on the eve of the final hearing. Father was forced to respond to Mother's motions; if Father attempted to refrain from responding, Mother filed a notice with the trial court that Father was unresponsive.

[32] When Mother received a negative response to her motion to offset an overpayment in child support payments against an attorney fee judgment, she filed an appeal despite the fact that the issue was not ripe and no other record existed but the pleadings. We dismissed Mother's appeal with prejudice but not before Father incurred fees to defend against an improper appeal.

[33] Mindful of the trial court's discretion in awarding attorney's fees and Mother's numerous filings which repeatedly sought the same result, we cannot say that the trial court improperly granted Father an award of attorney's fees.

## CONCLUSION

Based on the foregoing, we conclude that the trial court properly quashed the subpoena *ad testificandum* to elicit testimony from the minor child; Mother's due process rights were not violated by addressing Father's request for reimbursement of medical expenses; and the trial court did not abuse its discretion when it ordered Mother to pay Father's attorney's fees in the amount of $15,000.

Affirmed.

Bailey, J. and Barnes, J. concur