**Nick POPOVICH, Petitioner,**

v.

**INDIANA DEPARTMENT OF STATE REVENUE, Respondent.**

No. 49T10–1010–TA–53.

Tax Court of Indiana.

April 24, 2014.

James K. Gilday, Gilday & Associates, P.C., Indianapolis, IN, Attorney for Petitioner.

Gregory F. Zoeller, Indiana Attorney General, Thomas D. Cameron, Deputy Attorney General, Indianapolis, In, Attorneys for Respondent.

## ORDER ON PETITIONER'S FIRST MOTION TO COMPEL AND RESPONDENT'S MOTION FOR PROTECTIVE ORDER

WENTWORTH, J.

This matter involves Nick Popovich's first Motion to Compel the Indiana Department of State Revenue to respond to fifty-three (53) of his discovery requests and the Department's Motion for Protective Order that seeks to protect from disclosure the information and documents requested by Popovich.[1] The Court grants the parties' motions in part and denies them in part.[2]

### FACTS AND PROCEDURAL HISTORY

In 2007, the Department audited Popovich for the 2002 through 2004 tax years. (*See* Resp't App. Vol. I at 198, 206.) At the conclusion of the audit, the Department issued an investigation summary to Popovich explaining that because Popovich was not a professional gambler, he was not entitled to certain business expense deductions. (Resp't App. Vol. I at 206–15.) Accordingly, the Department issued Proposed Assessments to Popovich for additional income tax, interest, and penalties.[3] (*See* Resp't App. Vol. I at 231–40.)

Popovich protested the Department's Proposed Assessments. On August 3, 2010, after conducting a hearing, the Department issued a Letter of Findings (LOF) upholding each of the Proposed Assessments. (Resp't App. Vol. I at 196–205.)

On October 4, 2010, Popovich appealed to the Tax Court. On June 3, 2011, Popovich served the Department with his first set of discovery requests, which consisted of 19 requests for admission, 43 separately numbered interrogatories, and 21 separately numbered requests for production. (*See* Pet'r Mot. Compel, Ex. A at 5–70.)

1. Popovich filed a second motion to compel on January 23, 2012, and in a companion decision issued concurrently with this one, the Court denied that motion in its entirety. *See Popovich v. Indiana Dep't of State Revenue*, No. 49T10–1010–TA–53, 7 N.E.3d 419, 2014 WL 1641361 (Ind. Tax Ct. Apr. 24, 2014).

2. The Department filed a five-volume confidential appendix with this Motion. This Order will provide, therefore, only the information necessary for the reader to understand its disposition of the issues presented. *See generally* Ind. Administrative Rule 9.

3. The Proposed Assessments were for the 2003 through 2005 tax years. (*See* Resp't App. Vol. I at 231–40.)

In response, the Department objected to providing the information sought in 38 of the 43 interrogatories and 15 of the 21 requests for production because it was either protected as confidential information under Indiana Code § 6–8.1–7–1 or protected from disclosure by the work-product, attorney-client, and deliberative process privileges.[4] (Pet'r Mot. Compel, Ex. A at 15–70.) In addition, the Department objected to all of these requests as oppressive, ambiguous, and unduly burdensome; compound questions; seeking legal conclusions; or seeking information that was equally available to Popovich from other sources. (See Pet'r Mot. Compel, Ex. A at 15–70.)

On August 26, 2011, Popovich sent a nine (9) page Deficiency Notice to the Department asserting that its objections were improper and most of its answers were incomplete. (See Pet'r Mot. Compel, Ex. B.) Popovich asked for a response within ten days and indicated a willingness to meet to discuss the matter as required under Indiana Trial Rule 26(F). (See Pet'r Mot. Compel, Ex. B at 1, 9.) Four days later, the Department responded that it would supplement its discovery responses at a later date because the "artificially-created ten-day deadline" was unreasonable. (See Pet'r Mot. Compel, Ex. C.)

On September 9, 2011, Popovich renewed the offer to schedule an informal Trial Rule 26(F) meeting to resolve the discovery disputes. (See Pet'r Mot. Compel, Ex. D.) In response, the Department indicated that it would supplement its responses by October 21, 2011. (See Pet'r Mot. Compel, Ex. E; Resp't App. Vol. IV at 963–64.) Popovich agreed to this timing on the conditions that the Department cure all alleged deficiencies and not raise additional objections or counter arguments to the discovery requests without advising Popovich of its intent to do so before the agreed deadline. (See Pet'r Mot. Compel, Ex. F at 1–2.)

On October 21, 2011, the Department supplemented its discovery responses. All of the Department's supplemental responses provided the following additional language in support of its previously asserted objections:

The [Department] objects to the extent this Interrogatory improperly seeks matters protected by the work-product, attorney client, administrative judicial, or the deliberative process privilege(s). Furthermore, the [Department] objects to the Interrogatory to the extent it improperly seeks to pry into the hearing officer's decisionmaking process, and, therefore, will not lead to the discovery of admissible evidence. To allow such requests would violate the Indiana Supreme Court's adherence "to the general bar against probing the mental processes involved in administrative decision-makers' deliberations." See, e.g., Medical Licensing Bd. of Ind. v. Provisor, 669 N.E.2d 406, 409 (Ind.1996) (citing Marion Co. Sheriff's Merit Bd. v. Peoples Broadcasting Corp., 547 N.E.2d 235, 240 (Ind.1989)). "[I]nquiries into the private motivation or reasoning of administrative decision-makers is a substantial intrusion into the functions of the other branches of the government." Id. at 410 (Ind.1996) (citing Village of Arlington Heights v. Metropolitan Hous. Dev. Corp., 429 U.S. 252, 268 n. 18 [97 S.Ct. 555, 50 L.Ed.2d 450] (1977))[ ];

---

4. The Department refers to an administrative deliberative process privilege, an administrative judicial deliberative process privilege, and a deliberative process privilege without making a distinction between them. (See, e.g., Pet'r Mot. Compel, Ex. A at 15–16; Resp't Resp. Opp'n [Pet'r] Mot. Compel (hereinafter "Resp't Resp. Mot. Compel") at 7–12.) The Court will refer to all of these inclusively as a deliberative process privilege.

*Baseball, Inc. v. Ind. Dep't of State Revenue,* 672 N.E.2d 1368, 1375–76 (Ind.Ct. App.1996); Ind. Trial Rule 26(B)(3). (*See, e.g.,* Pet'r Mot. Compel, Ex. G at 9–11.)

On November 9, 2011, Popovich sent the Department a twenty-one (21) page letter that outlined the alleged deficiencies in the Department's original and supplemental responses and stated that he was "not seeking to pry into the manner in which [the] hearing officer considered or evaluated any evidence in reaching his or her decision." (*See* Pet'r Mot. Compel, Ex. H at 20.) Popovich's letter also renewed the request for an informal Trial Rule 26(F) meeting and warned that without some resolution, the filing of a motion to compel was imminent. (*See* Pet'r Mot. Compel, Ex. H at 21.)

The Department responded the next day, expressing surprise that Popovich still considered its original and supplemental responses deficient because the Department had fully complied with the discovery rules. (*See* Pet'r Mot. Compel, Ex. I.) The Department stated its willingness to meet, but not until the week of December 5, 2011, given the holidays and scheduling conflicts. (*See* Pet'r Mot. Compel, Ex. I.) Popovich responded the following week, explaining that while still willing to meet, the week of December 5th was too late to forestall his filing of a motion to compel. (Pet'r Mot. Compel, Ex. J.) On November 22, 2011, Popovich filed his first Motion to Compel.

On December 20, 2011, after attending an attorneys' conference with the Court, the Department supplemented its discovery responses. (*See* Pet'r Reply Supp. Mot. Compel (hereinafter "Pet'r Reply Mot. Compel") at 2–3 ¶¶ 7–15, Ex. L at 1–98.) This second set of supplemental responses did not provide any additional requested information or documents, but instead raised new objections, including the assertion that nearly all of Popovich's discovery requests were not relevant. (*See, e.g.,* Pet'r Reply Mot. Compel, Ex. L at 6–7.) Then, after the parties had another informal meeting, the Department provided a third set of supplemental discovery responses on December 30, 2011. (*See* Pet'r Reply Mot. Compel at 3–4 ¶¶ 16–18, Ex. N at 1–7.) This third set of supplemental responses presented no new information or objections. (*See* Pet'r Reply Mot. Compel, Ex. N at 1–7.)

On January 5, 2012, the Department filed a Motion for Protective Order for all of the discovery requests that were in dispute. (*See* Resp't Mot. Protective Order at 2 ¶ 6.) On March 1, 2012, the Court held a hearing on the parties' Motions. Additional facts will be supplied as necessary.

## LAW

"Discovery is the process by which the parties to an action ascertain the existence of material facts previously unknown." *Jacob v. Chaplin,* 639 N.E.2d 1010, 1012 (Ind.1994) (citation omitted). Indiana's discovery rules are designed to allow a liberal exchange of information essential to litigate all relevant issues and to promote settlement. *See Whitaker v. Becker,* 960 N.E.2d 111, 115 (Ind.2012); *Trost–Steffen v. Steffen,* 772 N.E.2d 500, 512 (Ind.Ct. App.2002), *trans. denied.* Indeed, today's pretrial discovery procedures are intended to " 'make a trial less a game of blindman's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent.' " *Whitaker,* 960 N.E.2d at 115 (citations omitted).

"Discovery is designed to be self-executing with little, if any, supervision of the court." *Trost–Steffen,* 772 N.E.2d at 512 (citation omitted). When this process breaks down or is inadequate, however, Indiana's trial rules provide that the parties may request court intervention to

compel a party to provide information or protect information from disclosure. Specifically, Indiana Trial Rule 37 states that "[a] party, upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling discovery[.]" Ind. Trial Rule 37(A). Trial Rule 26(C), which governs protective orders, provides in part:

> Upon motion by any party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]

Ind. Trial Rule 26(C).

■ Trial courts are accorded broad discretion in reviewing discovery enforcement motions. *See Vernon v. Kroger Co.,* 712 N.E.2d 976, 982 (Ind.1999). The Tax Court functions as a trial court in appeals from final determinations of the Department; accordingly, it too is accorded broad discretion in reviewing the discovery enforcement motions at issue. *See Hoosier Energy Rural Elec. Coop., Inc. v. Indiana Dep't of State Revenue,* 572 N.E.2d 481, 486 (Ind.1991).

### ANALYSIS

■ The Department contends that the information and documents that Popovich

seeks are shielded from discovery because they are not relevant, are protected by the deliberative process, work-product, and attorney-client privileges as well as a bar against probing the mental impressions of decision-makers.[5] The Department also maintains that Popovich's discovery requests are objectionable on several other grounds.[6] Popovich, however, claims that the information and documents he seeks are discoverable because all of the Department's objections to disclosure lack merit.

■ The Court's determination of whether the information and documents that Popovich seeks to discover and the Department seeks to protect from disclosure typically involves a two-part inquiry. *See Canfield v. Sandock,* 563 N.E.2d 526, 531 (Ind.1990); *Newton v. Yates,* 170 Ind. App. 486, 353 N.E.2d 485, 490 (1976). The Court must determine first whether the information and documents sought are relevant to the issues being tried and, if so, then the Court must determine whether the claimed privileges or other objections protect the information and documents from disclosure. *See Canfield,* 563 N.E.2d at 531; *Newton,* 353 N.E.2d at 490.

### Relevance

■ The Department claims that the information and documents Popovich seeks

5. In addition, the Department has claimed that Indiana Code § 6–8.1–7–1, which prohibits it from disclosing certain tax-related information in limited circumstances, bars the discovery requests that seek information regarding Sage–Popovich, Inc., a non-party. (*See, e.g.,* Pet'r Mot. Compel, Ex. A at 18–20.) Popovich is the current owner of Sage–Popovich and has indicated that he is willing to waive the confidentiality provisions of the statute. (*See* Hr'g Tr. at 142–43.) Consequently, the Court need not determine whether this statute bars the discovery requests.

6. For example, the Department also claims that Popovich's Motion should be denied because he did not attend an informal meeting or contact the Department telephonically before filing the Motion as required by Trial Rule 26(F). (*See* Resp't Resp. Mot. Compel at 2–3, 19.) *See also* Ind. Trial Rule 26(F) (providing that a party shall "[m]ake a reasonable effort to reach agreement with the opposing party" before filing a motion to compel). The Department's argument must fail, however, because Popovich attempted on at least three occasions to meet with the Department to resolve this matter before filing the Motion.

are not discoverable because they are not relevant to the subject-matter of the pending case.[7] Indiana's trial rules identify the scope of discovery to include

> any matter, not privileged, which is relevant to the subject-matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

T.R. 26(B)(1). Accordingly, "[r]elevancy for purposes of discovery is not the same as relevancy at trial; a document is relevant to discovery if there is the *possibility* that the information sought may be relevant to the subject[-]matter of the action." *Bishop v. Goins*, 586 N.E.2d 905, 907 n. 2 (Ind.Ct.App.1992) (emphasis added and citation omitted). Given that the scope of discovery is broad and highly dependent on the facts of each case, the Court must exercise discretion in determining what discovery is necessary and what is vexatious. *See Chambers v. Public Serv. Co. of Ind., Inc.*, 265 Ind. 336, 355 N.E.2d 781, 784 (1976); *Keystone Square Shopping Ctr. Co. v. Marsh Supermarkets, Inc.*, 459 N.E.2d 420, 425 (Ind.Ct.App.1984), *trans. denied.*

The Department advances two reasons why Popovich's discovery requests[8] are not relevant to the subject-matter of the pending action. First, the Department claims that Popovich's discovery requests fail to address the sole issue in this case—whether Popovich was a professional gambler. (*See* Resp't Legal Mem. Supp. Resp't Mot. Protective Order (hereinafter "Resp't PO Br.") at 5, 7.) Popovich's petition, however, identifies three additional issues for resolution: whether the 2003 assessment was timely, whether the Department's calculation of gambling income was correct, and whether the imposition of negligence penalties was proper. (*See* Pet'r Pet. ¶¶ 10–30.)

▮ Each of the discovery requests objected to as lacking relevance seeks information related to one or more of the issues in this case. For example, Popovich's interrogatories, numbers 8 through 22, and requests for production, numbers 12 and 16, seek information related to Popovich's audit. (*See* Pet'r Mot. Compel, Ex. L at 13–51, 90–91, 94–95.) Indeed, interrogatory number 10 states:

> Identify all information, including, but not limited to documents and things relied upon by the Department to support the statement made on page 2 of 19 of its December 29, 2007 Investigation Summary (Exhibit "A") that "[r]ecords

---

7. Popovich has argued that the Department waived its objections that particular requests were not relevant because it did not raise them until it filed its Motion for Protective Order. (*See* Pet'r Reply Supp. Mot. Compel (hereinafter "Pet'r Reply Mot. Compel") at 19–20.) The Court, however, will not address whether the Department waived these objections because Popovich made merely a bald claim of waiver without fully developing it, supporting it, or citing to legal authority.

8. In particular, the Department claims that interrogatory numbers 3 through 4, 6 through 22, 25 through 30, 36, and 38 through 40 and requests for production numbers 8 through 10, 13 through 17, and 19 through 21 are not relevant. (*See* Pet'r Reply Mot. Compel, Ex. L at 6–51, 53–61, 76–77, 78–80, 91–98.)

indicate that Mr. Popovich gambles extensively and his winnings may be used to facilitate [luxury vehicle] purchases," any individual who will testify to support such statement, as well as the significance of such statement to this case. (Pet'r Mot. Compel, Ex. L at 18.) These requests ask for the factual basis of several of the Auditor's written statements in the Department's Investigation Summary.[9] *See, e.g., Hoosier Energy,* 572 N.E.2d at 486 (explaining that testimony regarding documents generated during an audit was relevant and even necessary because the audit documents did not speak for themselves).

■ Popovich's interrogatories, numbers 33 through 35, seek information regarding negligence penalties. (*See* Pet'r Reply Mot. Compel, Ex. L at 66–75.) Moreover, Popovich's interrogatories, numbers 24 through 25, 29, and 37 through 40, and requests for production, numbers 19 through 20, seek to discover exhibits, contentions, and defenses the Department may introduce during the litigation of this matter. (*See* Pet'r Reply Mot. Compel, Ex. L at 52–55, 58–59, 77–80, 96–97.) As particular examples, request for production number 19 seeks "[a]ll documents that the Department intends to use as an exhibit at any hearing, deposition, trial, or in any filing in this matter[,]" (Pet'r Reply Mot. Compel, Ex. L at 96), and request for production number 20 requests "[a]ny and all documents specifically listed or referred to in Respondent's Exhibit List dated May 11, 2011." (Pet'r Reply Mot. Compel, Ex.

L at 97.) Discovery requests seeking information or documents concerning the claims and defenses of either party are relevant and therefore discoverable. *See* T.R. 26(B)(1). Accordingly, the Department has not demonstrated that Popovich's discovery requests do not concern the subject-matter of this case.

Second, the Department claims that the Court must find that the discovery requests are not relevant to the instant subject-matter because of the Court's *de novo* standard of review. (*See* Resp't PO Br. at 3–6.) The Department explains that because the Court owes no deference to its decisions and is not bound by the evidence, issues, or analysis considered at the administrative level, any information specific to, or documentation generated during, the administrative process is simply not relevant to the subject-matter of this case.[10] (*See* Resp't PO Br. at 6; Hr'g Tr. at 96–100.)

■ The Department's rationale fails, however, because discovery requests do not lack relevance just because they are not given deference or are not binding on the Court. To find otherwise would be antithetic to the broad scope of disclosure directed by Indiana's discovery rules to prevent trials by ambush. Indeed, evidence that the Court is not required to defer to or be bound by, like inadmissible trial evidence, is not necessarily irrelevant for discovery purposes. Thus, the proper inquiry is whether the information and documents sought pertain to the subject-matter of the pending action, the very

9. The Department has repeatedly stated that it does not object to providing factual evidence, and yet its objections to this type of request conflict with its statement. (*See, e.g.,* Hr'g Tr. at 104–06.)

10. As support, the Department cites to a portion of a hearing transcript in *Lacey v. Indiana Department of State Revenue,* 894 N.E.2d 1113 (Ind. Tax Ct.2008), *trans. denied.* (*See* Resp't Mem. Supp. Protective Order (hereinafter "Resp't PO Br.") at 6, Ex. B at 13–17.) This part of the transcript, however, refers to nothing more than a tangential exchange between the Court and a *pro se* litigant that was confined to the facts of that case.

inquiry answered affirmatively above. Accordingly, the Court finds that Popovich's discovery requests are relevant.

### Deliberative Process Privilege

 If a communication is privileged, it is afforded the special protection of being undiscoverable. *See* T.R. 26(B)(1). The Department claims that Indiana recognizes a deliberative process privilege that prohibits the discovery of communications that are a part of the Department's decision-making process. (*See, e.g.,* Resp't Resp. Opp'n [Pet'r] Mot. Compel (hereinafter "Resp't Resp. Mot. Compel") at 7–12.) The Department explains that this privilege provides a wide shield that protects all documents and communications evidencing the thoughts and deliberations of its hearing officers, auditors, and other employees throughout the entire administrative process. (*See* Hr'g Tr. at 55–59; Resp't PO Br., Ex. E.)

 In Indiana, evidentiary privileges are generally statutory in nature. *State v. Int'l Bus. Machs. Corp. (I.B.M.),* 964 N.E.2d 206, 209–10 (Ind.2012); *Richey v. Chappell,* 594 N.E.2d 443, 445–46 (Ind. 1992); *Terre Haute Reg'l Hosp., Inc. v.*

*Trueblood,* 600 N.E.2d 1358, 1360 (Ind. 1992); *Scroggins v. Uniden Corp. Am.,* 506 N.E.2d 83, 86 (Ind.Ct.App.1987), *trans. denied.* Most evidentiary privileges were unknown at common law and are strictly construed to limit their application. *Scroggins,* 506 N.E.2d at 86. Consequently, "[a] grant of [an evidentiary] privilege and the scope of that privilege are policy choices of the Legislature." *I.B.M.,* 964 N.E.2d at 210.

The Department first argues that Indiana has a deliberative process privilege because federal courts recognize this privilege under the Federal Rules of Civil Procedure, the model for Indiana's Trial Rules. (*See* Hr'g Tr. at 62–63.) Although the Court may look to federal decisions for guidance when interpreting Indiana's civil trial rules, the existence of a federal privilege does not necessarily animate a similar state privilege.[11] *See, e.g., Indiana Farmers Mut. Ins. Co. v. Richie,* 707 N.E.2d 992, 997 (Ind.1999) Indeed, the Department did not present binding Indiana authority that recognized or even referred to protecting communications related to agency decision-making as "privileges."[12] Thus, the Department has not shown that

---

11. The Department cites federal case law as support that Indiana has a deliberative process privilege. (*See* Resp't PO Br. at 11–12 (*citing, e.g., Jones v. City of Indianapolis,* 216 F.R.D. 440 (S.D.Ind.2003); *Government Suppliers Consolidating Servs., Inc. v. Bayh,* 133 F.R.D. 531 (S.D.Ind.1990)).) The Court finds these cases unpersuasive, however, because they involve either the application of federal law, not Indiana law, or were non-binding federal interpretations of state law. *See, e.g., Indiana Dep't Pub. Welfare v. Payne,* 622 N.E.2d 461, 468 (Ind.1993).

12. The Department presented just one Indiana decision, a trial court order, that referred to a deliberative process privilege. (*See generally* Resp't Resp. Item No. 1, Feb. 29, 2012 (*citing Whinery v. Roberson,* No.49D04–9808–CP–1149, 2001 WL 35836719 (Ind.Super.Ct. Sept. 21, 2011) (or-

der granting motion to compel)).) This order does not persuade the Court that Indiana has a deliberative process privilege for three reasons. First, the order does not indicate that the trial court addressed whether Indiana recognizes a deliberative process privilege, as is one of the questions asked here. Next, the order assumes the existence of such a privilege without any accompanying analysis generally expected for a question of first impression. Finally, a trial court's determination has similar force to that of *obiter dictum* and an unpublished decision, but is not, without more, precedent. *Indiana Dep't of Natural Res. v. United Minerals, Inc.,* 686 N.E.2d 851, 857 n. 1 (Ind.Ct.App.1997) (stating that decisions of one trial court are not binding on other trial courts, trial court conclusions of law from which no appeal was taken are not binding precedent, and it is inappropriate for counsel to cite trial court decisions as prece-

Indiana has a deliberative process privilege based on a privilege recognized in federal court decisions.

Next, the Department argues that its assertion of a deliberative process privilege is rooted in the Indiana Access to Public Records Act (APRA).[13] (*See* Resp't PO Br. at 10; Hr'g Tr. at 129–32) The APRA provides that a governmental agency may prohibit the disclosure of "[r]ecords that are intra-agency or interagency advisory or deliberative material, including material developed by a private contractor under a contract with a public agency, that are expressions of opinion or are of a speculative nature, and that are communicated for the purpose of decision making." IND.CODE § 5–14–3–4(b)(6) (2014). Nonetheless, the requests for information at issue here were made under Indiana's civil trial rules, not under the APRA. Moreover, even if the Department's objections to disclosure had been invoked under the APRA provision, APRA's statutory exception to disclosure would apply only to prohibit disclosure to the general public, not between the parties to a civil litigation.[14] Therefore, the APRA is not a basis for finding that a deliberative process privilege exists for purposes of discovery.[15]

Finally, the Department cites several Indiana cases that it claims recognize a

deliberative process privilege. (*See, e.g.,* Resp't Resp. Mot. Compel at 9–12 (*citing Medical Licensing Bd. Ind. v. Provisor,* 669 N.E.2d 406, 409–10 (Ind.1996)); Resp't PO Br. at 9–14 (*citing, e.g., Baseball, Inc. v. Indiana Dep't of State Revenue,* 672 N.E.2d 1368, 1376 (Ind.Ct.App.1996), *trans. denied* ).) These cases, however, do not refer to agency decision-making as "privileged" communications. Moreover, the Indiana Supreme Court has cautioned that evidentiary privileges, even when supported by sound public policy, " 'are not lightly created nor expansively construed [because] they are in derogation of the search for truth.' " *In re C.P.,* 563 N.E.2d 1275, 1277 (Ind.1990) (*quoting U.S. v. Nixon,* 418 U.S. 683, 710, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974)). Accordingly, the Court fails to find that Indiana recognizes a deliberative process privilege applicable to the discovery rules and leaves it to the Legislature to elevate public policy regarding the protection of deliberative processes into a privilege. Consequently, the Department's objections to disclosure based on an alleged deliberative process privilege fail.

### Mental Processes and Deliberations of Decision–Makers

◼ In the alternative, the Department claims that even if Indiana does not

dent), *trans. denied; see also* Ind. Tax Court Rule 17 (providing that unpublished decisions "shall not be regarded as precedent nor cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case").

**13.** (*See also* Resp't PO Br. at 12 ((*citing* IND. CODE § 4–21.5–1–1 *et seq.* (2014)); Resp't Reply Supp. Mot. Protective Order at 4.))

**14.** Similarly, federal decisions that construe the Freedom of Information Act ("FOIA"), the federal counterpart to APRA, recognize that "FOIA was not intended to be a discovery tool for civil plaintiffs." *See Honeywell, Inc. v.*

*Consumer Prod. Safety Comm'n,* 582 F.Supp. 1072, 1078 (D.D.C.1984) (citation omitted).

**15.** Indiana Code § 34–46–1–1 contains a listing of Indiana's privileged communications. *See* IND.CODE § 34–46–1–1 (2014). Although a deliberative process privilege is not identified, the statute specifically states that the list is not exhaustive and that other privileged communications may be recognized elsewhere. *See* I.C. § 34–46–1–1. The Court will not explore the matter any further, however, because the Department has not identified any other provision of the Indiana Code that is the basis for the alleged deliberative process privilege with respect to Indiana civil law discovery matters.

recognize a deliberative process privilege, the mental processes and deliberations of its hearing officers are not discoverable. (*See* Resp't Resp. Mot. Compel at 9–12; Hr'g Tr. at 55–57.) In some cases, Indiana has recognized a "general bar against probing the mental processes involved in administrative decision-makers' deliberations" when the decisionmaker is acting in a quasi-judicial capacity. *See Provisor*, 669 N.E.2d at 409 (citation omitted). *See also Marion Cnty. Sheriff's Merit Bd. v. Peoples Broad. Corp.*, 547 N.E.2d 235, 239 (Ind.1989); *Baseball*, 672 N.E.2d at 1376. Popovich explained to the Department, however, that his discovery requests do not ask to " 'probe the mental processes involved in [the hearing officer's] deliberations.' " (*See* Pet'r Mot. Compel, Ex. H at 20.) Instead, he merely sought "all relevant evidence whether or not it may have been considered or evaluated by the hearing officer(s) in [reaching] his or her determination." (*See* Pet'r Mot. Compel, Ex. H at 20–21.) Accordingly, the Department's objection on this basis must fail.

The Department further asserts that this bar extends to the deliberations and mental processes of its auditors when determining assessments. (*See* Hr'g Tr. at 55–61, 128–29; Resp't Resp. Mot. Compel at 9–12.) The Department explains that the thought processes of its auditors must be shielded because any disclosure of audit-related matters would reveal how the Department interprets various materials during the audit process, discouraging frank and open communications between its employees. (*See, e.g.,* Resp't PO Br., Ex. E at 2 ¶ 8.) Therefore, the Department

argues that Popovich's discovery requests related to the audit are similar to the prohibited requests in *Provisor* concerning a medical licensing board's deliberation communications, making it "abundantly clear that [Popovich's] requests are improper." (*See* Resp't Resp. Mot. Compel at 11–12.)

 A bar against probing the mental processes of decision-makers applies in limited circumstances like those in which an administrative decision-maker acts in a quasi-judicial capacity, such as presiding over a hearing, rendering an evidentiary ruling, or issuing a final judgment in a particular case. *See, e.g., Provisor*, 669 N.E.2d at 407–09. The audit process is not quasi-judicial in nature. It is instead a fact-finding exercise where a taxpayer is required to give the Department complete access to all its books or records or face possible sanctions. *See* IND.CODE §§ 6-8.1–3–12, –4–2, –5–4, –10–4 (2014). Indeed, the Indiana Supreme Court has found that "testimony of Department witnesses who were called to interpret and explain [ ] audit workpapers" is helpful in comprehending the audit workpapers. *See Hoosier Energy*, 572 N.E.2d at 486. Accordingly, a bar against probing the mental processes and deliberations of quasi-judicial decision-makers does not extend to protect the information or documents regarding Popovich's audit from disclosure.

### Work-product and Attorney–Client Privileges

 The Department also objects to Popovich's discovery requests based on the work-product and attorney-client privileges.[16] In most instances where the De-

---

16. "The work-product doctrine prohibits a party in litigation from obtaining from another party its 'attorney's notes and memoranda reflecting the attorney's theories and mental impressions about the case.' " *Hayworth v.*

*Schilli Leasing, Inc.*, 669 N.E.2d 165, 169 n. 7 (Ind.1996) (citations omitted); *see also* Ind. Trial Rule 26(B)(3). Indiana's attorney-client privilege is rooted in Indiana case law, Indiana Code § 34–46–3–1, and Rule 1.6 of

partment asserts these privileges as the basis of its objections, it does so in the form of blanket objections, those without any explanation or reasoning, stating that Popovich "improperly seeks matters protected by the work-product [and] attorney[-]client ... privilege(s)." (*See* Pet'r Reply Mot. Compel, Ex. L at 7–8, 10–11; Pet'r Mot. Compel, Ex. A at 18–19.) (*See also* Resp't Resp. Mot. Compel at 12–14.)

▮▮▮▮ It is well-recognized that blanket claims of privilege are not favored. *Hayworth v. Schilli Leasing, Inc.*, 669 N.E.2d 165, 169 (Ind.1996). "The party seeking to avoid discovery has the burden of establishing the essential elements of the privilege being invoked." *Howard v. Dravet*, 813 N.E.2d 1217, 1221 (Ind.Ct. App.2004). "Claims of privilege 'must be made and sustained on a question-by-question or document-by-document basis.'" *Hayworth*, 669 N.E.2d at 169 (citation omitted). "Absent an articulation of specific reasons why the documents [or communications] sought are privileged, the information is discoverable; otherwise, the whole discovery process is frustrated and vital information may be 'swept under the rug.'" *Brown v. Katz*, 868 N.E.2d 1159, 1167 (Ind.Ct.App.2007) (citation omitted).

The Department has provided no reasoning, argument, or citation to precedent or persuasive authority in support of its claims that the work-product and attorney-client privileges bar it from responding to Popovich's discovery requests.[17] Thus, the Department has attempted to shift the responsibility of articulating and adequately supporting its assertions of privilege to the Court. This the Court will not condone. *See Howard*, 813 N.E.2d at 1221 ("[t]he

party seeking to avoid discovery has the burden of establishing the essential elements of the privilege being invoked") (citation omitted); *Brown*, 868 N.E.2d at 1167 (the provision of some rationale for the assertion of a privilege on question-by-question basis facilitates a court's ability to rule on the matter with specificity). Consequently, the Court finds that the work-product and attorney-client privileges do not preclude disclosure in response to the majority of Popovich's discovery requests.

The Department has also explained, however, that it objects to responding to interrogatory number 4 because it improperly seeks the internal documentation and communications between the Department's employees and legal counsel. (*See* Pet'r Reply Mot. Compel, Ex. L at 8–10; Resp't Resp. Mot. Compel at 12–13.) Interrogatory number 4 states, in part, that it seeks the identity of "all Department employees who communicated with any third party with respect to anything to do with this Cause, either prior to or after the filing of the Petition" and "[t]he sum and substance of each such communication[.]" (*See* Pet'r Reply Mot. Compel, Ex. L at 7–10.) Thus, interrogatory number 4 may seek matters that are susceptible to protection from disclosure by either the work-product or the attorney-client privilege. The Court, therefore, will sustain the Department's objections to disclosing under the work-product and attorney-client privileges, but only to the extent that the Department identifies the communications with enough specificity for the parties to determine that they are indeed work-product or attorney-client communications. *See* T.R. 26(B)(5)(a) (requiring the party claiming

Indiana's Rules of Professional Conduct. *See Hayworth*, 669 N.E.2d at 169 n. 7.

17. During the hearing, in fact, the Department suggested that it had abandoned its

work-product privilege claims because they would be too difficult to prove. (*See* Hr'g Tr. at 53–54.)

protection from disclosure to "describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable the other parties to assess the applicability of the privilege or protection").

### Department's Remaining Objections

Finally, the Department objects to Popovich's discovery requests on the basis that one or more of them are oppressive, ambiguous, and unduly burdensome; are compound questions or not properly limited; seek legal conclusions or information within Popovich's rather than the Department's possession; and pose hypothetical questions. Once again, the Department presents blanket objections with no explanation why the requests have these characteristics and without citing to any authority. *See, e.g., Amax Coal Co. v. Adams,* 597 N.E.2d 350, 355 (Ind.Ct.App.1992) (explaining that discovery requests seeking "all facts" or "all documents" regarding a particular issue are not necessarily vague or ambiguous), *trans. denied; Bolen v. Mid–Continent Refrigerator Co.,* 411 N.E.2d 1255, 1261 (Ind.Ct.App.1980) (stating that "[a]n interrogatory is not objectionable merely because it calls for a[ ] . . . legal conclusion" (citations omitted)). Accordingly, the Court finds that none of these objections preclude disclosure.

### CONCLUSION

"[W]hen the discovery matters cannot be resolved by the sincere efforts of counsel, the issues presented to the court should be sharply focused in fact, law, and number, so that the trial court's time required is minimal and well spent." *Howard,* 813 N.E.2d at 1223. Unfortunately, neither party fully complied with this expectation and the Court admonishes them both for failing to do so.

For all the above-stated reasons, the Court GRANTS Popovich's Motion to Compel, with the exception of Interrogatory Number 4. The Court DENIES the Department's Motion for Protective Order, with the exception of Interrogatory Number 4. The Department must fully respond to Popovich's discovery requests and identify the work-product and attorney-client privilege objections with respect to Interrogatory Number 4 with the particularity contemplated by Trial Rule 26(B)(5) within forty-five (45) days of this Order. Consistent with the requirements of Indiana Trial Rule 37(A)(4), the Court will schedule a hearing regarding the propriety of an award of expenses by separate order.

SO ORDERED.