ATTORNEYS FOR PETITIONER:
**RANDAL J. KALTENMARK**
**ZIAADDIN MOLLABASHY**
BARNES & THORNBURG LLP
Indianapolis, IN

**THEODORE R. BOTS**
**JENNY A. AUSTIN**
BAKER & McKENZIE LLP
Chicago, IL

**SCOTT L. BRANDMAN**
BAKER & McKENZIE LLP
New York, NY

ATTORNEYS FOR RESPONDENT:
**CURTIS T. HILL, JR.**
ATTORNEY GENERAL OF INDIANA
**JESSICA R. GASTINEAU**
**WINSTON LIN**
**PAVINDER K. NIJJAR**
DEPUTY ATTORNEYS GENERAL
Indianapolis, IN

FILED

Feb 06 2017, 10:52 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# INDIANA TAX COURT

| | | |
|---|---|---|
| THE UNIVERSITY OF PHOENIX, INC., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Cause No. 49T10-1411-TA-00065 |
| | ) | |
| INDIANA DEPARTMENT OF STATE REVENUE, | ) | |
| | ) | |
| Respondent. | ) | |

## ORDER ON PETITIONER'S MOTION TO COMPEL
## RESPONSES TO DISCOVERY REQUESTS

**FOR PUBLICATION**
**February 6, 2017**

WENTWORTH, J.

The University of Phoenix, Inc. has moved to compel the Indiana Department of

State Revenue to produce information and documents regarding 1) Section 14 of House

Bill 1349 ("H.B. 1349"), 2) the Tax Competitiveness and Simplification Report of

September 2014 (the "Report"), and 3) a presentation on the Report (the "Presentation") as well as to compel the designation of a proper 30(B)(6) witness. Upon review, the Court grants the University's motion in part and denies it in part.

## FACTS AND PROCEDURAL HISTORY

In November of 2014, the University filed an original tax appeal challenging the Department's decision to source some of its online tuition revenue for the 2009 through 2011 tax years using a market-based or customer-based method rather than the income-producing activity (i.e., costs of performance) method required under Indiana Code § 6-3-2-2(f). During discovery, the University served the Department with its First Set of Interrogatories, First Request for Production of Documents, Supplemental Request for Production of Documents, and deposed the Department's three designated 30(B)(6) witnesses. (See generally Pet'r Mot. Compel Resp. Discovery Requests ("Pet'r Br.") ¶¶ 12, 22, 46-48, Exs. A-C.) The Department's responses to the University's Interrogatory Number 26, Request for Production Number 17, Supplemental Request for Production Numbers 1 and 2, and its 30(B)(6) witness designations are the subjects of this motion to compel.

### Interrogatory Number 26 and Request for Production Number 17

Interrogatory Number 26 asked the Department to:

> Identify all documents that the Department obtained or has in its possession relating to the proposed amendment of Ind. Code § 6-3-2-2(f) as contained in the original version of [H.B. 1349], § 14 introduced on January 13, 2015 in the State of Indiana General Assembly (Exhibit A).

(Pet'r Br., Ex. A at 14-15.) Request for Production Number 17 sought:

> All Documents and Communications relating to the proposed amendment of Ind. Code § 6-3-2-2(f) as contained in the original

2

version of [H.B. 1349], § 14 introduced on January 13, 2015 in the State of Indiana General Assembly.

(Pet'r Br., Ex. B at 116.) On June 22, 2016, after having received a five-month extension of time to answer the University's written discovery requests, the Department objected to Interrogatory Number 26 explaining that:

> [t]he Department objects to Interrogatory No. 26 as vague and ambiguous in its use of the terms "obtained," "proposed amendment," and "original version." The Department also objects that this Interrogatory is oppressive and unduly burdensome by requesting "all documents" without any limitation, including timeframe and subject matter. The Department further objects that [] the information apparently sought by this [I]nterrogatory is irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence, as the Tax Court reviews appeals from the Department <u>de novo</u>, the original version of [H.B. 1349] was not enacted, and this case regards the assessment of tax against [the University] during a tax year prior to [H.B. 1349's] introduction. Moreover, the Department objects to this Interrogatory because it appears to seek information regarding documents that are not authored by, kept in the regular course of business by, or issued under the authority of the Department. Furthermore, the Department objects that this Interrogatory appears to seek privileged information, including attorney-client communications and internal deliberations regarding state policy and proposed legislation. The Department also objects on the grounds that the Interrogatory is impossible to answer without disclosing confidential taxpayer information, and the Department and taxpayer(s) will be irreparably harmed if required to disclose this information to [the University].

(<u>See</u> Pet'r Br. ¶ 15, Ex. F at 272-73.) The Department provided a similar objection in response to Request for Production Number 17. (<u>See</u> Pet'r Br., Ex. E at 245-46.)

On July 20, 2016, the parties held a Trial Rule 26(F) conference during which the Department admitted that it had withheld certain H.B. 1349 documentation because it did not specifically reference the University and, thus, was not relevant. (Pet'r Br. ¶ 19.) In response, the University explained that its H.B. 1349 discovery requests were not

3

premised on specific references to the University, and therefore, the Department should have disclosed the H.B. 1349 documentation.  (See Pet'r Br. ¶ 20, Ex. H at 283-84.)

**Supplemental Request for Production Numbers 1 and 2**

On July 25, 2016, the University served the Department with a Supplemental Request for Production of Documents that consisted of only two additional requests for production.  (See Pet'r Br. ¶ 22, Ex. C.)  Specifically, the first supplemental request sought documentation regarding the Report:

> All Documents and Communications referred to, reviewed[,] created, consulted, examined, searched, used, and/or issued to or by employees or representatives of the Department relating to the drafting of Section II(B)(2) of the [Report] dated September 2014 (pages 38 and 39) ("Adopt Market-Based Sourcing of Service Receipts Section"), attached hereto as Exhibit A.  This Request . . . includes, but is not limited to, all Documents and Communications relating to the Adopt Market-Based Sourcing of Service Receipts Section in the possession of the following employees or representatives of the Department:  former Commissioner Michael Alley; Asheesh Agarwal; Doug Klitzke; Timothy Shultz; Jeff Raney; Lena Snethen[;] April Bruce; Collin Davis; Larry Molnar; Robert Dittmer; Kelsey Kotnik; and Daniel Perry.

(Pet'r Br. ¶ 22, Ex. C at 134-35.)  The second supplemental request used similar wording to seek additional documentation related to the Presentation.  (See Pet'r Br., Ex. C at 135.)  On August 29, 2016, the Department objected to these discovery requests as follows:

> The Department objects to the [Requests] as oppressive, overbroad, and unduly burdensome in seeking all documents "referred to, reviewed[,] created, consulted, examined, searched, used, and/or issued to or by employees or representatives of the Department," as [they] include[] documents which are not within the Department's knowledge, possession, or control, as well as information not retained by the Department. Further, th[e Requests are] irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, as the . . . [Report and Presentation both] post-date[] the [2009 through 2011] tax years

4

and the audit. Moreover, the Department speaks not through the isolated statements of its employees, but through its publications in the Indiana Register. . . . Additionally, th[e Requests] appear[] to improperly seek matters protected by the work-product or attorney client privileges, or to probe the hearing officers' decision-making processes, which are protected by the "general bar against probing the mental processes involved in administrative decision-makers' deliberations when the decision-maker is acting in a quasi-judicial capacity." . . . Finally, th[e Requests] seek[] confidential taxpayer information, and the Department and taxpayer(s) will be irreparably harmed if required to disclose this information to [the University].

(See Pet'r Br., Ex. J at 311-14 (citations omitted).) In spite of its objection, the Department did provide some documents in response to the University's supplemental production requests. (See Pet'r Br., Ex. J at 312, 314.) The University claimed, however, that the Department's response was "incomplete" because the documents provided were primarily undated excerpts of the Report and the Presentation that did not reveal their authors. (See Pet'r Br. ¶¶ 24-25.) Thereafter, the parties held two more Trial Rule 26(F) conferences in an attempt to resolve their evolving discovery dispute informally. (See Pet'r Br. ¶¶ 26, 28.)

### The Department's 30(B)(6) Witnesses

On September 8, 2016, the University issued a notice to the Department requesting that it designate a 30(B)(6) witness that could provide testimony on H.B. 1349, the Report, the Presentation, and "[t]he documents that the Department has produced in response to [the University's] Requests for Production." (See Pet'r Br., Ex. D at 225 ¶¶ 9-12, 227.) In October 2016, the University deposed the Department's designated 30(B)(6) witnesses: Steven Chang, the Department's auditor who conducted the audit of the University; Mandi Shawarira, the Department's Deputy Director of Enforcement who supervises Mr. Chang and the Department's out-of-state

5

auditors; and LuAnn Pelsor, the Department's Technical Manager for the Enforcement Division who supervises the Department's Audit Review and Computer Audit Team. (See Pet'r Br. ¶ 49, Ex. O at 369 ¶¶ 2-3.)

During their depositions, two of the witnesses explained that they were generally aware of the contents of H.B. 1349, the Report, or the Presentation, but that they did not know any specific details regarding the extent of the Department's involvement with drafting, editing, or providing the data that appeared within the documents. (See, e.g., Pet'r Br. ¶¶ 46-51, Ex. P at 393-396, Ex. R at 454-55.) After completing the depositions, the University contacted the Department to express its "concerns regarding the discovery produced to date and [the] overall integrity of the discovery process[.]" (See Pet'r Br., Ex. L at 359.) In particular, the University asserted that the Department haphazardly responded to its written discovery requests, inadequately prepared its 30(B)(6) witnesses, and inexplicably produced 30(B)(6) witnesses that offered no meaningful testimony on the deposition topics. (See generally Pet'r Br., Ex. L.)

On November 18, 2016, after having several additional communications with the Department, the University filed its Motion to Compel Responses to Discovery Requests with the Court. (See Pet'r Br. ¶¶ 30-34.) Meanwhile, on November 29, 2016, in an attempt to better ascertain the contours of the Department's involvement with H.B. 1349, the Report, and the Presentation, the University deposed a non-party, the former Commissioner of the Indiana Department of State Revenue, Michael Alley.[1] (See Pet'r Reply Supp. Mot. Compel Resp. Discovery Requests ("Pet'r Reply Br.") ¶ 7, Ex. C.) On

---

[1] The Department unsuccessfully sought a protective order to preclude the former Commissioner's deposition on two separate occasions. (See Pet'r Reply Supp. Mot. Compel Resp. Discovery Requests, Ex. A (order denying the Department's first motion for protective order), Ex. B (order denying the Department's second motion for protective order).)

January 17, 2017, the Court conducted a hearing on the Motion.

The University's Motion claims that the Department's refusal to disclose requested information and documentation on H.B. 1349, the Report, the Presentation, and to designate a proper 30(B)(6) witness impairs the University's ability to prepare for the Court-ordered March trial date. (See, e.g., Pet'r Br. ¶¶ 42, 63.) The Department, on the other hand, asserts that it need not disclose anything further because the University's discovery requests simply are not reasonably calculated to lead to the discovery of any evidence admissible at trial. (See, e.g., Resp't Mot. Leave File Sur-Reply Inc. Herein ¶ 9.) Additional facts will be supplied as necessary.

**LAW**

Discovery, the process by which litigants freely exchange information to ascertain the existence of previously unknown facts, is designed to be self-executing and require little, if any, court intervention. Popovich v. Indiana Dep't of State Revenue, 7 N.E.3d 406, 411 (Ind. Tax Ct. 2014). In the event the discovery process breaks down or is inadequate, however, Indiana's trial rules provide that the parties may request court intervention to resolve their disputes. Specifically, Indiana Trial Rule 37(A) allows a party to ask the Court for an order compelling discovery when: 1) a deponent fails to answer a question submitted under Trial Rule 30(B)(6), 2) a party fails to answer an interrogatory submitted under Trial Rule 33, or 3) a party fails to produce documents requested under Trial Rule 34. See Ind. Trial Rule 37(A)(2). For purposes of this Rule, an evasive or incomplete answer is deemed a failure to answer. T.R. 37(A)(3).

The precepts of Trial Rule 37(A) are governed by the general discovery provisions under Indiana Trial Rule 26, which states that the "[p]arties may obtain

7

discovery regarding <u>any matter</u>, not privileged, which is <u>relevant</u> to the subject-matter involved in the pending action[.]" Ind. Trial Rule 26(B)(1) (emphases added). Relevancy for purposes of discovery is not the same as relevancy at trial. <u>See</u> <u>Popovich</u>, 7 N.E.3d at 413. For purposes of discovery, information may be relevant to the subject-matter of a case - <u>even if deemed inadmissible at trial</u> - as long as the information sought appears reasonably calculated to lead to the discovery of admissible evidence. T.R. 26(B)(1). Consequently, discovery requests need not be limited to requests for evidence that may be admissible at trial; indeed, if the discovery requests are germane and there is some <u>reasonable possibility</u> that the answers will lead to the discovery of admissible evidence, the discovery requests generally are not objectionable. <u>See</u> <u>Ellis v. Pub. Serv. Co. of Indiana</u>, 342 N.E.2d 921, 925-26 (Ind. Ct. App. 1976).

**ANALYSIS**

The University uncontrovertibly seeks information, documents, and testimony regarding H.B. 1349, the Report, and the Presentation. The events specific to these discovery requests occurred at some point in 2014, several years after the 2009 through 2011 tax years that are at issue here. The University nonetheless claims that this time differential is of no import because 1) the Court previously acknowledged the relevance of the University's discovery requests, 2) Indiana Code § 6-3-2-2(f) has remained the same during the 2009 through 2011 tax years, and 3) H.B. 1349, the Report, and the Presentation may reveal "highly probative" information that has a tendency to make the inaccuracy of the Department's assessments more probable under Indiana Evidence

8

Rule 401.[2]  (See Hr'g Tr. at 15-20, 67-71.)  (See also Pet'r Br. ¶ 42; Pet'r Reply Br. ¶ 1.) The Court finds the University's claims unpersuasive for two reasons.

First, although this Court previously determined that deposing the former Commissioner regarding H.B. 1349, the Report, and the Presentation were relevant to the subject-matter of this case for purposes of discovery, that relevancy determination was made for the sole purpose of deciding whether to allow the former Commissioner to be deposed.  (See Pet'r Reply Br., Ex. B at 8-9 (noting that the ruling "does not mean that any information Mr. Alley provides will be automatically admissible at trial") (citation omitted).)  Accordingly, the Court rejects the University's attempt to expand its prior ruling to control this determination of the relevancy of H.B. 1349, the Report, and the Presentation under the specific factual circumstances presented in the University's Motion.

Second, despite the University's claims that the information related to its discovery requests and 30(B)(6) witness request would tend to make the Department's alleged sourcing errors more probable, the University failed to explain how the probability increased given the remoteness of the events from the 2009 through 2011 tax years.  Moreover, the University failed to explain how this remote information would be of any consequence in deciding whether the Department had the authority to use a market-based or customer-based sourcing method under Indiana Code § 6-3-2-2(f) during the tax years at issue.  Having already deposed the Department's 30(B)(6) witnesses and the former Commissioner to find that the information hoped for was probably not in the Department's possession or did not exist at all, the University has

---

[2]  Indiana Evidence Rule 401 provides that "[e]vidence is relevant if:  (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Ind. Evidence Rule 401.

9

uncovered no smoking gun. The additional discovery requests regarding events subsequent to the 2009 through 2011 tax years therefore are unlikely to reveal admissible evidence. Accordingly, the University's failure to reveal how information about H.B. 1349, the Report, and the Presentation could lead to the discovery of evidence admissible at trial brings discovery on those matters to an end.

That said – the Court does not excuse the apparent lack of true cooperation shown by the parties during discovery. The evidence before the Court shows that both parties participated in numerous phone calls, meetings, and exchanged correspondence that look on the surface like attempts to cooperate, but the sporadic vitriol of written submissions, the narrow interpretations of requests, and the failure to work things out without court intervention all indicate that neither party engaged in real compromise. This Court insists that litigants hold the purposes of discovery to avoid ignorance of the facts and to prevent trial by ambush paramount. See, e.g., Popovich, 7 N.E.3d at 414-15.

As an example of the lack of cooperation, the Department stated that it had obtained documents that were responsive to Request for Production Number 17, but admitted it withheld documents on the portion of H.B. 1349 that concerned the proposed amendment of Indiana Code § 6-3-2-2(f) because Request for Production Number 17 asked for the "original version[.]" (See Pet'r Br. ¶ 19, Ex. B at 116; Hr'g Tr. at 43-45.) This is particularly troubling given that the University also requested:

> All Documents and Communications issued by or to representatives of the Department including, but not limited to, [the former Commissioner] relating to the amendment of Ind. Code § 6-3-2-2(f).

(Pet'r Br., Ex. B at 116.) This obstinacy, however, was not confined to the Department.

Indeed, during the hearing on its Motion, the University suggested that the Department failed to disclose an Audit-Gram that was responsive to its Request for Production Number 7 despite the sworn statements of the Department's 30(B)(6) witnesses. (See Hr'g Tr. at 78.) Specifically, during the course of their depositions, each of the witnesses stated that while Audit-Grams are periodically issued to Department employees as guidance on a variety of tax issues, an Audit-Gram was not used in the University's audit and no Audit-Gram exists that is specific to either Indiana Code § 6-3-2-2(f) or its related regulation. (See Pet'r Br., Ex. P at 383-85, Ex. Q at 415-16 and 426-27, Ex. R at 449-51.) Furthermore, the Department reiterated that no such document existed in the motion to compel hearing. (See Hr'g Tr. at 53-57.) Given the level of cooperation to date, the Court reminds the parties that zealously defending one's client in our adversarial system does not include a rope-a-dope attitude toward discovery nor should it come at the expense of true cooperation.

## CONCLUSION

For the above-stated reasons, the Court GRANTS the University's Motion with respect to the previously withheld documentation regarding H.B. 1349 and ORDERS the Department to provide the documentation to the University within seven (7) days of the issuance of this Order. The Court, however, DENIES the University's Motion with respect to all other matters regarding H.B. 1349, the Report, the Presentation, and the designation of another 30(B)6) witness.

SO ORDERED this 6th day of February 2017.

Martha Blood Wentworth
Judge, Indiana Tax Court

11

Distribution:  Randal J. Kaltenmark, Ziaaddin Mollabashy, Theodore R. Bots, Jenny A. Austin, Scott L. Brandman, Jessica R. Gastineau, Winston Lin, Pavinder K. Nijjar.